# 23-7612

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

SALAMON GIMPEL, ROSEWOOD FUNERAL HOME,

*Lead Plaintiffs-Appellants,*

JAMES SPADOLA, RODNEY LYNN,

*Consolidated Plaintiffs,*

BRADLEY D. FLORA, Individually and
on behalf of all others similarly situated,

*Plaintiff,*

—against—

THE HAIN CELESTIAL GROUP, INC., IRWIN D. SIMON, PASQUALE CONTE, JOHN CARROLL, STEPHEN J. SMITH,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

ROBERT V. PRONGAY
JONATHAN M. ROTTER
LEANNE SOLISH
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150

BRIAN SCHALL
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, California 90067
(310) 301-3335

CAROL C. VILLEGAS
CHRISTINE M. FOX
JAMES M. FEE
MATTHEW J. GRIER
LABATON KELLER SUCHAROW LLP
140 Broadway, 34th Floor
New York, New York 10005
(212) 907-0700

*Attorneys for Lead Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................... iii

RULE 26.1 DISCLOSURE STATEMENT ............................................... 1

JURISDICTIONAL STATEMENT .......................................................... 2

ISSUES PRESENTED FOR REVIEW .................................................... 3

INTRODUCTION ................................................................................... 3

STATEMENT OF THE CASE ................................................................. 5

I.    FACTUAL BACKGROUND ........................................................... 5

    A.    Hain Sells Organic and Natural Products ............................... 5

    B.    Hain Employed, but Did Not Disclose, Unsustainable Pull-In
        Sales Practices .......................................................................... 6

    C.    The Off-Invoice Sales Concessions Were Material ............... 8

    D.    The Truth Gradually Emerges, Causing Investor Losses ...... 9

    E.    Hain Restates Its Financials, Announces It Suffered a Material
        Weakness, and Admits to Undisclosed Sales Concessions ...... 11

II.    PROCEDURAL HISTORY AND RULING BELOW ................................. 13

    A.    Amended Complaints and Defendants' Motions to Dismiss ...... 13

    B.    Second Circuit Remand ............................................................ 14

    C.    Supplemental Briefing, Report and Recommendation, and the
        District Court's Dismissal of the SAC ..................................... 15

SUMMARY OF ARGUMENT ................................................................ 16

STANDARD OF REVIEW ...................................................................... 19

ARGUMENT ........................................................................................... 19

I.  ISSUES REACHED BY THE DISTRICT COURT .....................................19

    A.  The District Court Once Again Improperly Emphasized Right-
        of-Return Allegations, Thereby Tainting Its Analysis.......................19

    B.  The District Court Erred in Finding That the SAC Failed to
        Adequately Plead Scienter ...................................................................21

        1.  The SAC Alleges Conscious Misbehavior and
            Recklessness.................................................................................22

        2.  The SAC Alleges Motive and Opportunity ..............................41

        3.  The Required Holistic Analysis Establishes Scienter..............45

    C.  The District Court Abused Its Discretion in Denying Leave to
        Amend ....................................................................................................47

II. ISSUES NOT REACHED BY THE DISTRICT COURT............................49

    A.  The SAC Pleads Materially False and Misleading Statements...........50

        1.  Defendants Did Not Disclose Hain's Unsustainable
            Channel Stuffing Practices When Touting Hain's
            Financial Results ........................................................................51

        2.  Hain Issued False Financials for FY2014, FY2015, and
            Most of FY2016 ..........................................................................54

        3.  The SAC Pleads Misstatements Regarding Hain's
            Accounting Policies, Distributors' Inventory Levels, and
            Sales and Trade Promotions.......................................................56

        4.  The SAC Pleads Misstatements Regarding Hain's
            Internal Controls ........................................................................59

        5.  The CW Accounts Support Plaintiffs' Falsity Allegations ......60

    B.  The SAC Adequately Alleges Loss Causation ...................................62

    C.  The Complaint Adequately Alleges Section 20(a) Claims ................64

CONCLUSION .......................................................................................................64

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004) ..................................................55

*In re Avon Sec. Litig.*,
    2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019)...................................39

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ......................................... 27-28

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    556 F. Supp. 3d 100 (D. Conn. 2021).........................................31, 32

*Buxbaum v. Deutsche Bank A.G.*,
    2000 WL 33912712 (S.D.N.Y. Mar. 7, 2000)...................................24

*In re Cannavest Corp. Sec. Litig.*,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018) .......................................29, 43

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014) .................................................63

*CILP Assocs., LP v. Pricewaterhouse Coopers LLP*,
    735 F.3d 114 (2d Cir. 2013) .................................................22

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
    477 F. Supp. 3d 123 (S.D.N.Y. 2020) ...................................37, 39, 43

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    928 F. Supp. 2d 705 (S.D.N.Y. 2013) .........................................64

*Cunha v. Hansen Nat. Corp.*,
    2011 WL 8993148 (C.D. Cal. May 12, 2011),
    *tentative ruling made final*, 2012 WL 3970307
    (C.D. Cal. Sept. 4, 2012)....................................................26

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
   323 F. Supp. 3d 393 (S.D.N.Y. 2018) ..............................................49

*In re DRDGOLD Ltd. Sec. Litig.*,
   472 F. Supp 2d 562 (S.D.N.Y. 2007) .................................................55

*In re Dura Pharms., Inc. Sec. Litig.*,
   452 F. Supp. 2d 1005 (S.D. Cal. 2006)..............................................25

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...........................................................48

*Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*,
   794 F.3d 297 (2d Cir. 2015) .......................................................*passim*

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..............................................55

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...............................40, 63, 64

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000) ........................................................53, 54

*Gauquie v. Albany Molecular Rsch., Inc.*,
   2016 WL 4007591 (E.D.N.Y. July 26, 2016)...................................38

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004) ................................................................50

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ....................................36

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) ................................................................22

*In re Insys Therapeutics, Inc. Sec. Litig.*,
   2018 WL 2943746 (S.D.N.Y. June 12, 2018) ..................................29

*IWA Forest Indus. Pension Plan v. Textron Inc.*,
   14 F.4th 141 (2d Cir. 2021) ...............................................19, 54, 61

iv

*Lematta v. Casper Sleep, Inc.*,
2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022) ..................................................52

*Limantour v. Cray Inc.*,
432 F. Supp. 2d 1129 (W.D. Wash. 2006) ........................................................60

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) ..............................................................................27

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ........................................................................*passim*

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).............................................................................................51

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) .................................................................51, 58, 59

*Mild v. PPG Indus., Inc.*,
2018 WL 6787351 (C.D. Cal. Dec. 21, 2018)............................................ 38-39

*Murphy v. Precision Castparts Corp.*,
2017 WL 3084274 (D. Or. June 27, 2017),
*report and recommendation adopted*, 2017 WL 3610523
(D. Or. Aug. 22, 2017).................................................................................. 58-59

*In re Nature's Sunshine Prods. Sec. Litig.*,
486 F. Supp. 2d 1301 (D. Utah 2007).................................................................60

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011) .............................................................36, 37, 39

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) .......................................................................52, 63

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019) .................................................................26

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015).............................................................................51, 58, 59

*In re OSG Sec. Litig.*,
12 F. Supp. 3d 622 (S.D.N.Y. 2014) ...........................................................29, 31

*Pasternack v. Shrader*,
863 F.3d 162 (2d Cir. 2017) ...............................................48

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
939 F. Supp. 2d 445 (S.D.N.Y. 2013) ...............................57

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ...................22

*Reiner v. Teladoc Health, Inc.*,
2021 WL 4451407 (S.D.N.Y. Sept. 8, 2021),
*report and recommendation adopted*, 2021 WL 4461101
(S.D.N.Y. Sept. 29, 2021)...................................................49

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ........................................... 22-23

*In re Salix Pharms., Ltd.*,
2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ...........*passim*

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001) .......................................*passim*

*In re Scottish Re Grp. Sec. Litig.*,
524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...............................31

*Setzer v. Omega Healthcare Invs., Inc.*,
968 F.3d 204 (2d Cir. 2020) ..............................................23

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
348 F. Supp. 3d 313 (S.D.N.Y. 2018) ........................44, 46

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..................................................*passim*

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014)......................27

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016) ..............................................50

*In re Wells Fargo & Co. Sec. Litig.*,
2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021) ...................52

**Statutes & Rules**

28 U.S.C. §1291 ................................................................2

Sarbanes-Oxley Act of 2002 §302 .................................8, 59, 60

Securities Exchange Act of 1934 §10(b), 15 U.S.C. §78j(b) ........................*passim*

Securities Exchange Act of 1934 §20(a), 15 U.S.C. §78t(a)..........................*passim*

Fed. R. App. P. 26.1(a) .......................................................1

Fed. R. Civ. P. 9(b) ..........................................................48

Fed. R. Civ. P. 12(b)(6)......................................................19

SEC Rule 10b-5, 17 C.F.R. §240.10b-5 ...............................*passim*

## <u>RULE 26.1 DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1(a), Lead Plaintiff-Appellant Rosewood Funeral Home states that there is no parent corporation or any publicly held corporation that owns 10% or more of its stock. Lead Plaintiff-Appellant Salamon Gimpel is an individual and accordingly no disclosure is required.

## JURISDICTIONAL STATEMENT

This securities class action against The Hain Celestial Group, Inc. ("Hain" or the "Company"), Irwin D. Simon, Pasquale Conte, John Carroll, and Stephen J. Smith (the "Individual Defendants," and collectively with Hain, "Defendants"), arises under Securities Exchange Act of 1934 ("Exchange Act") §§10(b), 20(a), 15 U.S.C. §§78j(b), 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5. Joint Appendix ("JA")-195¶19, JA-196-99¶¶25-30.[1]

This is an appeal from the District Court's September 29, 2023 Order (the "Order") adopting Magistrate Judge Lee G. Dunst's November 4, 2022 Report and Recommendations (the "R&R") as to the scienter-related recommendations and the dismissal recommendation of a securities class action complaint for failure to state a claim. Special Appendix annexed hereto ("SPA")-1-60 (Order adopting R&R); JA-960-1027 (R&R).

A Judgment was entered on September 29, 2023. SPA-61.

Lead Plaintiffs-Appellants Rosewood Funeral Home and Salamon Gimpel (together, "Plaintiffs") filed a Notice of Appeal on October 26, 2023. JA-1132-33.

The Court has jurisdiction under 28 U.S.C. §1291.

---

[1] Citations to "¶__" herein refer to paragraphs of the Second Amended Consolidated Class Action Complaint for Violations of Federal Securities Laws ("Second Amended Complaint" or "SAC"), JA-179-319. All emphasis is added, and citations and quotation marks are omitted unless otherwise noted.

## ISSUES PRESENTED FOR REVIEW

1.      Whether, on *de novo* review, Plaintiffs adequately alleged a strong inference of scienter where the SAC provides ample allegations of Defendants' conscious misbehavior and recklessness and their motive and opportunity to engage in the fraud at issue.

2.      Whether the District Court abused its discretion by denying Plaintiffs' request for leave to amend their complaint where the District Court's dismissal hinged on fact-intensive scienter issues that could be cured on amendment.

3.      Whether, if the Court chooses to address the issues, the SAC adequately pleads materially false and misleading statements, loss causation, and Section 20(a) control person claims.

## INTRODUCTION

This action arises from Defendants' failure to disclose to investors that Hain was unsustainably loading its customers and distributors with excess product (commonly known as "channel stuffing") during November 5, 2013 through February 10, 2017 (the "Class Period"). Despite the Individual Defendants' knowledge of and participation in these practices, Defendants repeatedly touted Hain's financial metrics, among other misleading statements, even attributing Hain's high sales volume to strong consumer demand and other organic factors, while omitting that Hain's high sales volume was achieved, in significant part, by the offer

3

of unsustainable channel stuffing incentives and subsequent accounting gimmicks. Hain's channel stuffing practices were a ticking time bomb, as these practices cannibalized sales that otherwise would have occurred in later quarters. Thus, when Hain stopped stuffing the channel at the request of its distributors, its business tanked.

Beginning in late 2015, newly hired Hain personnel began looking at Hain's books and questioning Hain's practices, and eventually brought in outside auditors. The Company conducted an internal investigation, and over approximately the next year, the truth of Hain's unsustainable practices and Defendants' misrepresentations gradually came to light, resulting in significant shareholder losses. Flowing from the Company's investigation, on June 22, 2017, Hain restated its historical financial results for the fiscal years 2014 and 2015, and the first three quarters of 2016. Defendants overstated net sales, enabling Hain to meet or only slightly miss consensus net sales estimates for six consecutive quarters, which Hain would have otherwise missed, or missed by significantly more, had it reported its actual results. Finally, in December 2018, Hain announced that it had settled charges with the Securities and Exchange Commission (the "SEC") for various securities laws violations. As part of this settlement, the Company admitted to internal control failures, and the SEC found, among other things, that Hain's end-of-quarters sales were not appropriately documented.

4

Plaintiffs have pursued this action to hold Defendants accountable for this misconduct and to compensate victimized shareholders. Nearly four years ago, the District Court dismissed the SAC because it held, *inter alia*, Plaintiffs failed to plead an inference of scienter, as the SAC did not establish that Hain offered its distributors an "absolute right of return." On appeal, this Circuit vacated the District Court's decision, in part, because of its improper focus on these right-of-return allegations. On remand, however, the District Court (and the Magistrate Judge whose R&R was partially adopted) made this same error, among others, dismissing the SAC with prejudice for failure to plead scienter. The District Court's decision is erroneous and should be vacated.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

#### A.    Hain Sells Organic and Natural Products

Hain is a leading seller of organic and natural and personal care products that sells most of its products to specialty and natural food distributers, supermarkets, natural food stores, and select e-commerce retailers. JA-187¶2, JA-202¶44. During the Class Period, approximately 30% of Hain's net sales for its U.S. Business Segment were derived from two distributors: (1) United Natural Foods, Inc. ("UNFI"), accounting for approximately $325-350 million in annual net sales for fiscal years 2014-2016 (more than 20% of Hain's net sales for its U.S. Business Segment); and (2) another distributor that accounted for more than $155 million in

5

net sales annually (approximately 8% of Hain's net sales for its U.S. Business Segment). JA-187¶2; JA360.

### B. Hain Employed, but Did Not Disclose, Unsustainable Pull-In Sales Practices

By the start of the Class Period, demand for Hain's products began to deteriorate, as competition increased and the organic foods market tightened. JA-204-05¶¶49-52. To mask these problems, Defendants began offering distributors sales concessions to persuade them to accept more inventory than necessary—a practice known as "pulling in" sales and referred to internally as "loading." JA-206¶55.

Details of these sales practices were eventually revealed in a settlement Hain reached with the SEC on December 11, 2018. JA-192-93¶13. In the accompanying order (the "SEC Consent Order"), Hain admitted to providing distributors off-contract sales concessions—including to its top two distributors—in order to incentivize them to purchase excess inventory, including: (1) cash financial incentives (ranging from $75,000 to $500,00 per quarter per distributor); (2) extended payment terms (up to 90 days); (3) substantial discounts off list price or off-invoice price (up to 20% off, with one of Hain's distributors receiving a $1.5 million discount in a single quarter during fiscal year 2016); and (4) "spoils coverage," whereby Hain agreed to reimburse the distributors for excess product that

6

spoiled or expired before the distributor could sell through to retailers. JA-206¶56, JA-209-10¶68, JA-358-65.

Former Hain employees serving as confidential witnesses in the SAC ("CWs") provide additional details about the sales concessions. For example, CW4 referred to these undisclosed, unsustainable sales practices as "loading" and explained that Hain offered concessions to the distributor, saying "here's a discount to load." JA-211-12¶73. CW4 further explained that, at the end of each quarter, Hain would ship inventory to distributors to increase reported revenue and then "de-load" (*i.e.*, return the product) in the following quarter. *Id*. CW6 explained that Hain coordinated with UNFI and other distributors to make up for earnings shortfalls by giving distributors "off-invoice" concessions, which ranged from 10-25% discount on total sales for the quarter. JA-211¶71. CW7 detailed Hain's loading practices and explained that Hain was consistently forced to offer material concessions or make other deals with customers to achieve Hain's quarterly revenue projections. JA-212¶74. CW2 stated that Hain's "core business practice" during the Class Period was to load distributors with inventory at the end of the quarter to increase "financial reporting." JA-213¶77. CW3 prepared budget materials for James Meiers, Hain's former COO, and constantly saw products being returned and credits being issued. JA-189¶8, JA-212¶75. CW1, who was responsible for booking credits, explained

that by June 2015, the credit numbers became suspicious, as sales were declining but the credits continued to grow. JA-217¶89.

Although not necessarily illegal if properly accounted for and properly disclosed to investors, reliance on these sales practices is unsustainable because it requires pulling forward sales from future quarters into current ones and depends on customers' continued willingness to accept more product than necessary—which cannot be guaranteed. JA-206¶57. Crucially, during the Class Period, Defendants did not disclose to investors that Hain relied on these unsustainable sales practices, nor did they properly account for them.

Indeed, Defendants made scores of statements rendered false and misleading by their failure to disclose Hain's reliance on these practices, including statements regarding Hain's: (1) reported financial results (*i.e.*, statements relating to Hain's financial results and the reported results themselves); (2) accounting policies and practices; (3) distributors' inventory levels; (4) sales and trade promotions reporting; and (5) internal controls and certifications pursuant to Section 302 of the Sarbanes-Oxley Act ("SOX"). *See, infra*, Argument § II.A (detailing Defendants' misstatements).

## C.     The Off-Invoice Sales Concessions Were Material

Hain's channel stuffing was material to the Company's business. For example, UNFI made more than half of its quarterly inventory purchases in the last

month of the quarter, making those purchases subject to Hain's extra-contractual incentives. JA-210¶69. Based on Hain's overall, quarterly U.S. net sales of approximately $300 million, more than 15% of Hain's total quarterly U.S. sales were achieved through Hain's loading in the final month of the quarter to UNFI. *Id*.

**D.    The Truth Gradually Emerges, Causing Investor Losses**

Beginning in late 2015, Hain brought in new personnel, specifically James Langrock (who would eventually become Hain's CFO), who questioned the accounting treatment of the sales concessions described in Hain's books and brought in outside auditors. JA-224¶115, JA-224-25¶117, JA-231¶146. On January 11, 2016, after Ernst & Young, Hain's external auditor, began to question Hain's accounting, Hain cut its quarterly and annual guidance. JA-225-26¶121. The next day, Defendant John Carroll—Hain's then-Executive Vice President and CEO for Hain Celestial North America—acknowledged the guidance cut was "*in the area of inventory*," but attributed Hain's problems to "*one-offs.*" JA-267¶281.

On January 21, 2016, the truth began to emerge to the market as Hain unexpectedly reported that Ross Weiner, its Chief Accounting Officer, was leaving. JA-226¶122. On this news, Hain's stock price fell more than 7%. JA-226¶124. Yet, the next day, J.P. Morgan published a report quoting Defendant Irwin Simon— Hain's founder and then-President, CEO, and Chairman—as stating there was "*nothing wrong with Hain's accounting at all*." JA-226¶123.

9

Near the end of fiscal year ("FY") 2016 (ended June 30, 2016), Hain's top distributors, including UNFI, inevitably reached their maximum inventory capacity and told Hain they would be reducing inventory going forward. JA-188¶5, JA-193-94¶15, JA-225¶118. Indeed, by August 2016, UNFI was stocking nearly five months of inventory for just one of Hain's brands. JA-214-15¶81. Thus, on August 15, 2016, Hain announced that it was delaying the filing of its FY2016 financial results due to its investigation of whether revenue associated with certain distributor concessions was properly and timely accounted for. JA-226-27¶125, JA-281-83¶¶323-24. On this news, Hain's stock price plummeted *more than 26%*. JA-227¶126, JA-282-83¶324.

On November 16, 2016, Hain announced that its Audit Committee had completed an investigation into the Company's financial statements. JA-284¶326. The Company represented that, while it purportedly found "no evidence of intentional wrongdoing in connection with the Company's financial statements," it was remediating its internal controls. JA-284¶¶326-27. However, these disclosures were materially misleading in that Defendants knew, or recklessly disregarded, that the Company failed to maintain effective internal controls over financial reporting during the Class Period. JA-231-32¶147, JA-284¶328. Further, Hain's review of its financial statements and potential revenue recognition errors was ongoing (and not completed). JA-229¶134.

Three months later, on February 10, 2017, Hain changed its tune and revealed it had expanded the scope of its internal accounting investigation to include its historical financial results, and that the SEC had issued a formal order of investigation and was seeking documents. JA-229¶137. In reaction to these disclosures, Hain's stock price fell more than 8%. JA-230¶138.

Finally, when Hain stopped stuffing the channel at the request of its distributors, its business paid the price. For the first nine months of FY2017 ended March 31, 2017, Hain reported a 14% year-over-year decrease in U.S. net sales over those nine months, and a net income and earnings per share decrease of 51.1%, as compared to the first nine months of FY2016. JA-234-35¶153.

### E. Hain Restates Its Financials, Announces It Suffered a Material Weakness, and Admits to Undisclosed Sales Concessions

Through the series of corrective disclosures described *supra* (January 21, 2016; August 15, 2016; and February 10, 2017), Hain revealed the full extent of Defendants' fraud. Then, on June 22, 2017, Hain restated its historical financial results for FY2014 and FY2015, and the first three quarters of FY2016. JA-231-35¶¶146-53. Hain revealed that net sales were overstated by 2.1%, 2.9%, and 1.9% in FY2014, FY2015, and for the nine months ended March 31, 2016, respectively. JA-233¶¶148-49. But for these unsustainable and undisclosed practices and the subsequent improper overstatement of revenue, *Hain would have missed analysts' consensus estimates for net sales for six consecutive quarters* (JA-234¶¶151-52):

11

| NET SALES (GAAP) ($ millions) | | | | | | |
|---|---|---|---|---|---|---|
| | Q1 FY 15 | Q2 FY 15 | Q3 FY 15 | Q4 FY 15 | Q1 FY 16 | Q2 FY 16 |
| | 9/30/14 | 12/31/14 | 3/31/15 | 6/30/15 | 9/30/15 | 12/31/15 |
| Consensus Estimate* | $639 | $717 | $659 | $695 | $703 | $750 |
| | | | | | | |
| Reported | $631 | $696 | $663 | $698 | $687 | $753 |
| Restated | $597 | $680 | $652 | $681 | $668 | $743 |
| | | | | | | |
| Reported | Miss ($8) | Miss ($21) | Beat | Beat | Miss ($16) | Beat |
| Restated | Miss ($42) | Miss ($37) | Miss | Miss | Miss ($35) | Miss |

Moreover, Defendant Simon was awarded a $5,565,725 cash bonus in FY2015 based on Hain meeting certain financial metrics, including net sales. JA-295-96¶¶363-64. Simon met his target bonus for net sales by *only 0.1%*. JA-295-96¶364.

In the Company's restated financial results, Hain also admitted that it had a material weakness in its internal controls relating directly to its reliance on "concessions or side agreements" with its customers and the related accounting impact of those agreements. JA231-32¶147.

On December 11, 2018, Hain settled charges with the SEC for, and admitted to, violations of: (1) Section 13(b)(2)(A) of the Exchange Act, which requires companies to make and keep records that accurately and fairly reflect sales transactions; and (2) Section 13(b)(2)(B) of the Exchange Act, which requires companies to devise and maintain a system of internal accounting controls sufficient

12

to provide reasonable assurance that sales transactions are executed in accordance with management's authorization and in conformity with generally accepted accounting principles ("GAAP"). JA-236¶157. In admitting to violations of Section 13(b)(2)(B) for its internal control failures, Hain accepted the SEC's findings that "[f]rom at least 2014 until May 2016, Hain U.S. sales personnel gave sales incentives to certain distributors to promote sales at the end of quarters. *These incentives had potential accounting implications.*" JA-359, JA-236-37¶158. In addition, Hain's end-of-quarter sales with Distributor 1 (UNFI) "were not appropriately documented" and "[i]n some quarters, particular incentives . . . *were agreed to orally.*" JA-361, JA-237-38¶161. According to the SEC, Hain also lacked policies to monitor the revenue recognition implications of sales incentives and failed to maintain an effective system of internal controls. JA-236-38¶157-62, JA-358-65.

## II.  PROCEDURAL HISTORY AND RULING BELOW

### A.  Amended Complaints and Defendants' Motions to Dismiss

On September 7, 2017, Plaintiffs filed a Corrected Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "CAC") asserting claims against all Defendants under Exchange Act §10(b) and Rule 10b-5 for material misstatements, and against the Individual Defendants under §20(a) as control-persons of Hain. JA-16 (ECF No. 75), JA-27-136. Defendants moved to dismiss the CAC for failure to state a claim. JA-17 (ECF No. 81). Without oral argument, on

March 29, 2019, Judge Arthur D. Spatt issued a Memorandum of Decision & Order dismissing the CAC with leave to amend. JA-20 (ECF No. 106), JA-137-78. On May 6, 2019, Plaintiffs filed the SAC. JA-20 (ECF No. 110), JA-179-319. The SAC added allegations concerning the SEC Consent Order, the averments of two new CWs, and additional false and misleading statements. *Id*. Defendants moved to dismiss the SAC for failure to state a claim. JA-21 (ECF No. 116). Again, without oral argument, Judge Spatt issued an Opinion dismissing the SAC, this time with prejudice. JA-21-22 (ECF No. 122), JA-813-48. Lead Plaintiffs timely appealed. JA-22 (ECF No. 124).

### B.   Second Circuit Remand

After full appellate briefing and oral argument, on December 17, 2021, the Second Circuit issued an opinion vacating the District Court's order dismissing the SAC and remanding the case for further consideration. JA-849-67. In its opinion, the Second Circuit summarized Plaintiffs' allegations: "Defendants made statements attributing Hain's high sales volume to strong consumer demand, while omitting to state that increased competition had weakened consumer demand and that Hain's high sales volume was achieved in significant part by the offer of unsustainable channel stuffing incentives. The success of such a complaint in alleging a violation of clause (b) does not depend on whether the alleged channel stuffing practices themselves were fraudulent or otherwise illegal." JA-864-65.

14

On scienter, the Second Circuit found: (1) the "district court's mistaken understanding of the substance of the alleged offense [*i.e.*, concealing unsustainable channel stuffing incentives] inevitably affected the district court's view of whether it was done with scienter"; and (2) "the [district] court erred in failing to weigh Plaintiffs' scienter allegations as a whole . . . [because it] failed [] to assess the total weight of the circumstantial allegations *together with* the allegations of motive and opportunity." JA-865-66 (emphasis in original). The Court directed: "On remand, the district court should independently reassess the sufficiency of the scienter allegations, considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity." JA-866.

### C. Supplemental Briefing, Report and Recommendation, and the District Court's Dismissal of the SAC

Following of the death of Judge Spatt during Plaintiffs' appeal, on remand, Judge Joanna Seybert was assigned to preside over the case. JA-22 (ECF No. 128). On April 14, 2022, after a pre-motion conference, Judge Seybert issued a minute order permitting abbreviated supplemental briefing on Defendants' motions to dismiss the SAC. JA-23 (ECF No. 131). That supplemental briefing was completed on June 23, 2022. JA-23-24 (ECF Nos. 134-37). On June 14, 2022, Judge Seybert referred Defendants' Motions to Dismiss to Magistrate Judge Lee G. Dunst for a report and recommendation. JA-24. On November 4, 2022, Magistrate Judge Dunst issued the R&R recommending that the District Court dismiss the SAC because,

15

*inter alia*, the SAC failed to plead any false and misleading statements and did not allege a strong inference of scienter. JA-25 (ECF No. 142), JA-960-1027. On December 7, 2022 Plaintiffs filed an Objection to the R&R with the District Court, which Defendants opposed, and briefing concluded on Plaintiffs' Objection to the R&R on April 3, 2023. JA-25 (ECF Nos. 144-47).

On September 29, 2023, the District Court adopted the R&R's recommendation as to the scienter-related recommendations and the dismissal recommendation, dismissed the SAC with prejudice, and rendered its final judgment. JA-26 (ECF Nos. 148-49), SPA-1-61. On October 26, 2023, Plaintiffs timely filed a Notice of Appeal. JA-26 (ECF No. 150), JA-1132-33.

## <u>SUMMARY OF ARGUMENT</u>

I.      The District Court contravened the Second Circuit's prior ruling by improperly emphasizing right-of-return allegations, thereby tainting its analysis of the SAC. When the District Court first dismissed the SAC, nearly four years ago, it did so largely on the basis that the SAC purportedly failed to allege a right of return—which the Second Circuit previously held was improper. On remand, however, the District Court, vis-á-vis its concurrence and adoption of the R&R, again unduly focused on the SAC's right-of-return allegations, leading it to dismiss the SAC.

II.     The District Court erred in dismissing the SAC on scienter grounds.

16

*First*, the District Court erred by failing to adequately consider the SAC's allegations of conscious misbehavior or recklessness. The SAC includes detailed allegations of (1) Defendants' direct involvement in and approval of Hain's unsustainable sales practices; (2) GAAP and internal controls violations; (3) suspicious personnel changes; (4) core operations; (5) the magnitude of Hain's end-of-quarter sales to UNFI; (6) Hain's significant remedial measures; and (7) numerous well-founded allegations from CWs with direct visibility to the unsustainable business practices.

*Second*, the District Court did not properly consider Plaintiffs' motive-and-opportunity allegations. Specifically, Simon and Carroll benefitted from suspiciously timed and unusually large insider stock sales and from enormous bonuses directly tied to the Company's successful hitting of pre-determined sales figures.

*Third*, the District Court did not perform the required cumulative analysis of the SAC's circumstantial-evidence allegations and motive-and-opportunity allegations. In this Circuit's prior decision, this Court required the District Court to cumulatively assess both sets of allegations, which the District Court failed to adequately do.

III.    The District Court abused its discretion in denying Plaintiffs' request to amend. Despite clear precedent that leave to amend should be freely granted, the

17

District Court dismissed the SAC with prejudice, depriving Plaintiffs of the ability to cure any purported deficiencies identified in the Order.

IV.    Because the District Court found that Plaintiffs did not plead a strong inference of scienter and adopted the R&R as to its scienter-related recommendations, the District Court's Order did not address whether Plaintiffs adequately pleads actionable misstatements, other than noting that it "concurs" with the R&R's recommendation. If this Court finds that Plaintiffs have adequately alleged a strong inference of scienter, and the Court chooses to address whether the SAC pleads falsity, Plaintiffs respectfully request that this Court find that the SAC does so. Most notably, Defendants failed to disclose to investors Hain's unsustainable channel stuffing practices when touting Hain's financial results—which were themselves materially misleading for FY2014, FY2015, and most of FY2016. Additionally, Defendants' failure to disclose these practices rendered false additional misstatements regarding Hain's accounting policies and practices, distributors' inventory levels, sales and trade promotions, and internal controls. The allegations are amply supported by a plethora of CW allegations.

V.    The Order also did not address whether the SAC adequately alleges loss causation. Should this Court rule on this issue, Plaintiffs respectfully request that it find that the SAC pleads the required link between the loss suffered by investors and the alleged misrepresentations.

VI.     Should the Court decide that the SAC alleges the elements of Section 10(b) claim, Plaintiffs respectfully submit that their Section 20(a) control person claims should be revived as well.

## STANDARD OF REVIEW

This Court reviews *de novo* a judgment of dismissal under Rule 12(b)(6), assuming all facts alleged in the complaint to be true and drawing all reasonable inferences in favor of plaintiffs. *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021).

This Court reviews a denial of leave to amend for abuse of discretion. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015).

## ARGUMENT

## I.     ISSUES REACHED BY THE DISTRICT COURT

### A.     The District Court Once Again Improperly Emphasized Right-of-Return Allegations, Thereby Tainting Its Analysis

The District Court proceedings in this case, both before and after this Court's prior decision, have suffered from undue focus upon allegations concerning a right to return unsold Hain products. In the first dismissal with prejudice of Plaintiffs' SAC, the District Court reasoned that the SAC failed to plead a securities fraud claim based upon Rule 10b-5(b) "because its predicate is the illegitimacy of the channel stuffing practices the Court already found to be legitimate." JA-836. The District Court concluded that without a sufficiently pled right of return, Hain's unsustainable

19

practices were not fraudulent or illegal and thus did not support a securities fraud claim. JA-836-47.

In vacating that earlier decision, this Court concluded that the District Court's reasoning reflected not only "a misunderstanding of the requirements of [Rule 10b-5(b)], [but also] Plaintiffs' theory" of the case. JA-864. The Court further vacated the District Court's ruling with respect to its scienter findings, explaining that "[t]he district court's mistaken understanding of the substance of the alleged offense inevitably affected the district court's view of whether it was done with scienter." JA-865.

On remand, the District Court, *vis-á-vis* its concurrence and adoption of the R&R (SPA-45-60), again unduly focused on the SAC's right-of-return allegations. Indeed, the R&R determined the right to return was "[a]t the heart of Plaintiffs' claims," and was central in concluding that Plaintiffs failed to plead an actionable misstatement or omission and that Plaintiffs failed to sufficiently allege scienter. JA-998-1000, JA-1014-15. The District Court explicitly adopted this framing when dismissing the SAC on scienter grounds. SPA-51 (repeating the R&R's conclusion that the "right of return" was the "heart of Plaintiffs' claims").

In so doing, the District Court again misunderstood Plaintiffs' theory of this case. Plaintiffs allege that during the Class Period Defendants relied on undisclosed and unsustainable business practices, including loading excess inventory onto

Hain's U.S. distributors at the end of financial quarters, while also failing to properly account for these sales tactics, resulting in positive—yet unsustainable and undisclosed—effects on Hain's revenues and financial results. JA-205¶53, JA-211-20¶¶71-100. The SAC alleges that the right of return was just one of many undisclosed sales and accounting tactics relied upon by Defendants, but in no way are Plaintiffs' allegations reliant on that right of return. The District Court's continued emphasis on this one allegation—out of numerous others—is reversible error, as this Court has previously recognized.

### B.    The District Court Erred in Finding That the SAC Failed to Adequately Plead Scienter

Scienter may be established by alleging facts showing either "motive and opportunity to commit the fraud," or "strong circumstantial evidence of conscious misbehavior or recklessness." *Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). The Court must "assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007). The inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences," rather it must only be "cogent and at least as compelling as any opposing inference." *Id.* at 324. Indeed, at the pleading stage, "a tie on scienter goes to the plaintiff." *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *13-14 (S.D.N.Y. Apr. 14, 2020). Importantly, on a motion to dismiss, the heightened scienter pleading standard does not rise to the level of "the more

probing test used at the summary judgment" stage because "the court is unaided by discovery." *Blanford*, 794 F.3d at 306.

### 1. The SAC Alleges Conscious Misbehavior and Recklessness

The Complaint adequately pleads scienter through circumstantial evidence of Defendants' conscious misbehavior and recklessness. Recklessness is "conduct that [i]s highly unreasonable, representing an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *CILP Assocs., LP v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 127 n.11 (2d Cir. 2013). In a securities fraud case, plaintiffs may demonstrate strong circumstantial evidence of scienter by detailing "reckless disregard of a known or obvious duty to disclose," *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016), including conduct that is "highly unreasonable, representing an extreme departure from the standards of ordinary care," such that "danger was either known to the defendant or so obvious that the defendant must have been aware of it," *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000). A strong inference of scienter as to a corporate defendant is adequately pled when "someone whose intent could be imputed to the corporation acted with the requisite scienter." *Loreley*, 797 F.3d at 177.

Where, like here, a company and its executives are aware of negative information about a "significant source of income" which "plainly impact[s]" the

company's "overall financial health," they act reckless in withholding that information with knowledge that "revealing the full extent" of the negative information "would have been troubling news to its investors." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 215 (2d Cir. 2020).

***Defendants' Knowledge of, and Active Participation in, Hain's Unsustainable Sales Practices Support Scienter***. The Order erred in finding that the Defendants' personal involvement in the undisclosed sales practices, as well as their extensive efforts to conceal the extent and terms of those practices, did not contribute to a strong inference of scienter. *See* SPA-51-52. Rather, "[w]here the complaint alleges that defendants knew facts or had access to non-public information contradicting their public statements, recklessness is adequately pled for defendants who knew or should have known they were misrepresenting material facts with respect to the corporate business." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 73 (2d Cir. 2001). Defendants' frequent commentary on Hain's sales (JA-238-70¶¶163-292) and close monitoring of the quarterly figures to meet targets (*e.g.*, JA-208-09¶¶62-65, JA-219-20¶¶97-100) collectively contribute to an inference of scienter. Further, Defendants actively monitored inventory levels and thus knew how much excess inventory was at the distributors (JA-217-22¶¶91-100). *See Blanford*, 794 F.3d at 306 ("access to information" supports scienter); *In re Salix Pharms., Ltd.*,

2016 WL 1629341, at *14 (S.D.N.Y. Apr. 22, 2016) (statement concerning precise inventory levels weighed in favor of scienter).

Importantly, the SAC adequately alleges that the Individual Defendants and senior management were personally involved in negotiating sales concessions— such as discounts, cash incentives, extended payment terms, and spoilage coverage—with distributors, confirming that they were aware of the very facts Plaintiffs allege they failed to disclose to investors. *See, e.g.*, JA-213¶78 (CW2), JA-217-18¶92 (CW4); *Buxbaum v. Deutsche Bank A.G.*, 2000 WL 33912712, at *19 (S.D.N.Y. Mar. 7, 2000) (scienter pled where individual defendant was "personally involved").

Specifically, Plaintiffs allege that Simon and Carroll *personally* negotiated these arrangements with UNFI and other distributors. Carroll ran the U.S. division together with Meiers, and Carroll would obtain the mid-quarter sales results so he would know the shortfall before negotiating with distributors to take more inventory. JA-208¶¶62-63, JA-220¶101. Then, Carroll negotiated the off-invoice concessions in exchange for distributors' taking the dollar amount of inventory necessary for Hain to meet its quarterly sales targets, after which Carroll and Simon directed the managers of Hain's brands as to the amounts to load onto the distributors' trucks. JA-208¶63, JA-213¶78, JA-218-19¶¶94-95. And once the shipments left the warehouse, Meiers' team accounted for the off-invoice concessions. JA-209¶64.

After the off-invoice concessions were posted to Hain's internal systems, Meiers and his inner circle then smoothed out the sales and revenue numbers to avoid discovery of the fraud. *Id*. Meiers then sent the modified sales and revenue numbers to Hain's then-CFO, Defendant Stephen Smith, and later, to Smith's successor, Defendant Pasquale Conte, who incorporated them into Hain's public filings. JA-197-98¶27, JA-209¶64.

CW6 recalled that Carroll would ask him to provide certain numbers, usually by mid-quarter, so Carroll would know the sales shortfall before negotiating the concessions with UNFI. JA-218¶93. Carroll then provided an incentive to UNFI to take the amount of inventory necessary for Hain to meet its quarterly sales revenue numbers. *Id*. On internal sales calls in which both CW6 and Carroll participated, Carroll would inform the participants that he had negotiated "OIs," meaning "off-invoice" concessions, with UNFI that would make up the sales deficit for that quarter. *Id*.; *see In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1029-30 (S.D. Cal. 2006) (channel stuffing tactics supported inference of scienter). Similarly, CW7, who confirmed that the term "loading" was used freely among senior executives, including Carroll and Meiers, stated that Simon dealt directly with UNFI's owner when it came to anything related to revenue, and that Simon could "always make them [UNFI] buy more if needed." JA-217¶91, JA-218¶94. CW7 further stated that Simon had "special powers" when it came to interfacing with

25

Hain's customers and that only the higher-ups had the power to make "special deals" with distributors. JA-218-19¶95. *See Cunha v. Hansen Nat. Corp.*, 2011 WL 8993148, at *3 (C.D. Cal. May 12, 2011) (CEO responsible for negotiating agreements with large distributor "was (or certainly should have been) aware of the [channel stuffing] orders and their effects"), *tentative ruling made final*, 2012 WL 3970307 (C.D. Cal. Sept. 4, 2012).

The Order fails to engage with these allegations and instead holds that the SAC does not plead scienter as to Plaintiffs' absolute-right-of-return allegations. SPA-51. But this is entirely beside the point, as Plaintiffs' theory of liability does not depend on the existence of an absolute right of return. *See, supra,* Argument § I.A. Further, Plaintiffs are not required to plead an absolute right of return to show scienter. *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 32 (S.D.N.Y. 2019) (scienter adequately pled without right of return allegation); *Salix*, 2016 WL 1629341, at *13-17 (same).

The Order also improperly holds that the SEC Consent Order "undermines" the inference of scienter because it "stat[ed] there was nothing wrong with Hain's sales practices, and the SEC did not charge the Company or any individual with fraud." SPA-52. But the SEC Consent Order does not "undermine" any inference of wrongful intent because it is the result of a negotiated compromise between Hain and the SEC and "not the result of an actual adjudication of any of the issues." *See*

26

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351, at *4 n.5 (S.D.N.Y. Aug. 8, 2014) ("The SEC's decision to not prosecute its claims is irrelevant as to whether Plaintiffs have plausibly alleged claims in *this* case.") (emphasis in original). Moreover, the SEC Consent Order found that sales concessions were made and that internal control weaknesses existed. JA-192-94¶¶13-16. These findings further support a strong inference that the Individual Defendants were aware of the misleading nature of their public statements. Specifically, the SEC Consent Order confirmed the "beginning of the end" for Defendants' improper practices when distributors told Hain that "they would no longer accept so much excess inventory." JA-193-94¶15, JA-225¶118. The SAC alleges that Simon, Conte, and Carroll knew that the distributors' refusal to accept excess product would adversely impact the Hain's financial reports (*see* JA-257¶249, JA-266¶279, JA-267¶282, JA-268-69¶287, JA-269¶289, JA-270¶292) but they "continue[d] dancing as long as the music [wa]s playing even knowing that the ball may be over." *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 487 (S.D.N.Y. 2011) (scienter adequately pled).

The sole, narrow exculpatory finding by the SEC is that the "vast majority" of products eventually "sold through" to retailers. JA-362. The remaining, detailed findings in the SEC Consent Order concerning the end-of-quarter sales concessions

27

program and lack of internal controls over financial reporting support a strong

inference that the Individual Defendants were aware of the stark contradictions

between their public statements and the facts on the ground at Hain. *See Scholastic*,

252 F.3d at 73 ("aggressive sales practices" tended to show that "company officials

were aware of declining sales").

**GAAP and Internal Controls Violations Support Scienter.** The Order

wrongly concluded that Hain's admission in its late filed FY2016 Form 10-K of the

need to restate results due to ineffective internal controls for FY2014, FY2015, and

the first three quarter of FY2016 did not contribute to a finding of a strong inference

of scienter. SPA-53-54. The late-filed FY2016 Form 10-K disclosed that Hain's

internal controls over financial reporting were ineffective as of June 30, 2016,

including internal controls "to identify, accumulate and assess the accounting impact

of certain concessions or side agreements on whether the Company's revenue

recognition criteria had been met." JA-231-32¶147. Additionally, Hain settled

charges with the SEC related to internal accounting controls and agreed to the SEC's

findings that "[f]rom at least 2014 until May 2016, Hain's U.S. sales personnel gave

sales incentives to certain distributors to promote sales at the end of quarters," and

that "Hain lacked sufficient policies and procedures to provide reasonable

assurances that [end-of-quarter] sales were accounted for properly" JA236-37¶158,

JA-238¶162. Coupled with the restatement, these insufficient internal controls

support an inference of scienter, as courts in this Circuit "have repeatedly held." *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 246 (S.D.N.Y. 2018).[2]

The Order, however, adopts the R&R's conclusion that "Plaintiffs neither undermined the assertions in the SOX Statements that management reviewed Hain's internal controls and concluded that the controls were effective nor adequately pled that Defendants knew or were reckless in not knowing that the Company's internal controls were deficient." SPA-53. But this conclusion ignores the many CW allegations illustrating the opposite. Most notably, CW3—who was Meiers' executive assistant—recalled that Meiers (Hain's former COO, who reported to Carroll) led "closed door" quarterly meetings with three other accounting employees, "changing numbers" for the sales results for the quarter. JA-189¶8, JA-208¶62, JA-220-21¶104. These were sales *results*, not forecasts. Meiers would sit in a room for a week to make the numbers "look pretty." JA-220-21¶104. CW3 "knew the numbers were changing" because CW3 would be asked to print the same report

---

[2] The Order concludes that *Cannavest*, 307 F. Supp. 3d at 246, is inapt because the allegations in that case "were strongly supported by statements of a confidential witness" who was well-positioned to know about the defendants' scienter related to the company's internal controls. SPA-53. But as detailed herein, the allegations of *multiple* knowledgeable CWs contribute to an inference that Defendants were at least reckless regarding Hain's internal controls. Further the Order fails to account for the many other cases in this Circuit holding that weak internal controls support an inference of scienter. *See, e.g., In re Insys Therapeutics, Inc. Sec. Litig.*, 2018 WL 2943746, at *6 (S.D.N.Y. June 12, 2018); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632-33 (S.D.N.Y. 2014).

multiple times. *Id*. When CW3 questioned why he was being asked to print the same report again, one of Meiers' direct reports told him: "just don't ask . . . we've made some changes." *Id*.

More broadly, according to CW7, no one at Hain put any time or effort into implementing proper internal controls. JA-223¶113, JA-224¶115. Specifically, Hain had no internal audit function, no internal compliance department, and no formal revenue recognition policy. *Id*. Instead, a single Senior Vice President in finance, Rose Ng, was considered to be the "police." JA-223¶¶112-13 (CW7). When Ms. Ng asked for justification of changed numbers, she was fired. *Id*. Similarly, CW1 described Hain's internal controls as "not good" and recounted that if Meiers did not like the financial numbers, Meiers would go to accounting and say "this number has to change" and it would change. JA-220¶102.

Likewise, Hain lacked effective internal controls over the proper documentation of sales contracts, as CW8 recalled that some customers had no contracts, some customers had "vague" contracts, and other customers had off-invoice deals and issues with "bill backs." JA-224-25¶117. Documentation for the many variations of contracts was generally "lacking." *Id*. These allegations were confirmed in the SEC Consent Order. JA210-11¶70, JA-236-37¶¶157-58, JA-238¶162. When analyzed "collectively" and not "scrutinized in isolation," Plaintiffs'

allegations regarding Hain's ineffective controls over financial reporting support an inference of scienter. *Tellabs*, 551 U.S. at 322-23.

*Terminations, Resignations, and Demotions Support Scienter.* Suspicious personnel changes "support[] an inference of scienter" when they "suggest[] a higher level of wrongdoing approaching recklessness." *OSG*, 12 F. Supp. 3d at 632-33; *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007) (resignations "add to the overall pleading of circumstantial evidence of fraud"). Plaintiffs plead that the terminations of *seven* executives and the demotions of *two* more—a group that includes each Individual Defendant—contribute to a strong inference of scienter when considered holistically with Plaintiffs' other scienter allegations. JA-288-90¶¶339-50. Courts in this Circuit have found that suspicious resignations "tied to the unethical and illegal sales practices" support an inference "at least as compelling, at a minimum, as any opposing inference." *See Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 136 (D. Conn. 2021). Further, resignations occurring during "investigations by [the] Audit Committee . . . support a strong inference of scienter." *Salix*, 2016 WL 1629341, at *15. Such inferences in Plaintiffs' favor are appropriate even if "there could be other explanations for the resignations" of high-level executives. *Alexion*, 556 F. Supp. 3d at 136.

The District Court recognized that the timing of these personnel changes "may" support an inference of scienter (SPA-54), but nonetheless adopted the

R&R's conclusion that there were a "dearth of facts indicating those [personnel] changes are tied to the alleged fraud" (SPA-55). But such a holding ignores the detailed allegations of numerous CWs, most notably regarding the departures of Ng, Powhida, Smith, and Weiner, and the demotion of Meiers.

According to CW1, Rose Ng and Marla Hyndman (the Controller) would ask Meiers to justify sales numbers based on their discussions with Hain's auditors, but ultimately Meiers got what he wanted done. JA-220¶102. These allegations are supported by CW3, who recounted that Ng attempted to serve as a check and balance within the finance team and was always chasing Meiers for numbers and butting heads with him, which led to her firing in September 2015 for being a "bottleneck" who was unwilling to manipulate the Company's financials. JA-223¶112. CW3 recalled that Meiers did not like to have anyone looking over his shoulder, and "if you fight back . . . goodbye." *Id*.

According to CW7, Ng had "wanted to dig into" Meiers' numbers, which made Meiers uncomfortable. JA-223¶113. Meiers was very secretive with his numbers because providing numbers prematurely elicited questions that he did not want asked of him at the time. *Id*. Thus, Ng was kept away from the details concerning loading to distributors at the end of the quarter, and when she asked questions, she was told by executives to stop asking. *Id*.; *see Blanford*, 794 F.3d at 308 ("CWs' observations that high level managers discouraged questions about

32

unorthodox inventory practices" supported inference of scienter). Once Ng was gone, CW7 recounted that no one at Hain was performing Ng's "police" function because Hyndman would go along with whatever Meiers wanted. JA-223¶113.

The same month that Ng was fired (September 2015), Stephen Powhida, a Senior Vice President in manufacturing who reported to Meiers, also was fired. According to CW1 and CW7, Meiers used Powhida as a "scapegoat" because Meiers relied on and pushed Powhida to make the numbers, and it was "getting out of control." JA-223-24¶114.

Also in September 2015, Hain announced that Smith was leaving after only two years as CFO and would be replaced by Conte. JA-222¶108. Smith claimed he was leaving to "pursue other opportunities," but months later Smith's LinkedIn page stated that he was still "seeking new opportunities." JA-223¶111, JA-288-89¶340. The Order adopts the R&R's conclusion that Smith's departure does not support scienter because "without more, resigning after an even shorter tenure than Smith's does not support scienter." SPA-55. But the SAC does allege "more," as Smith left without a job lined up within weeks of Ng and Powhida because, according to CW1, Smith was unwilling to be one of Simon's puppets, and Smith did not like what he was seeing with regard to the off-invoice concessions given to distributors. JA-222¶¶108-09.

33

In January 2016—approximately four months after the trio of September 2015 departures, and after Ernst & Young identified accounting irregularities and commenced an audit—Ross Weiner unexpectedly announced his resignation as Chief Accounting Officer. JA225-26¶119-22, JA-289¶342. According to CW6, Weiner (like Smith) left Hain because he was uncomfortable with the off-invoice concessions being given to distributors. JA-226¶122.

Later, on December 7, 2016, Hain announced that Gary Tickle would become Chief Operating Officer for Hain Celestial U.S. and Meiers would move to Hain's Pure Protein Corporation in addition to being Chief Operations Officer for Hain's Project Terra. JA-289¶344. CW1 stated that he has heard that this new position was a demotion for Meiers, but Hain wanted the market to think it was a promotion. *Id*.

The Order goes to lengths to distinguish the facts at issue here from those in *Salix*, where the company clawed back compensation of certain Individual Defendants, which was permitted under these individuals' resignation agreements if they "intentionally engaged in wrongdoing." SPA-54 (*citing Salix*, 2016 WL 1629341, at *15). But the company in *Salix*, 2016 WL 1629341, at *15, did not admit that it exercised the clawback provisions because of any wrongdoing. Thus, the company's decision to claw back compensation in *Salix* contributed to an inference of scienter because it *implied* that the clawback provisions *might have been* exercised because of wrongdoing. *Id*. Here, the inference is *stronger* because, as described

34

herein, multiple CWs *explicitly* tie many of the departures and demotions at issue *directly* to the fraud.[3]

Beyond the departures of Ng, Powhida, Smith, and Weiner—and the demotion of Meiers—the District Court failed to properly consider additional suspicious personnel moves. For example, the Order adopts the R&R's conclusion that the SAC fails to plead that Carroll's demotion and Conte's departure were tied to the fraud. SPA-55-56. But this fails to properly account for the fact that Carroll was demoted within weeks of Hain's failure to file corrected financial results in February 2017 (JA-230¶¶140-42, JA-289-90¶345) and Conte resigned as CFO *on the same day* Hain filed its restatement and announced its remedial measures to correct material weaknesses in its internal controls (JA-231¶146). Likewise, the District Court fails to account for the fact that the departure of Simon—who signed Hain's SOX certifications—was announced in June 2018 in the lead-up to the announcement of the SEC settlement later that year, exposing the failures of Hain's internal controls. JA-197¶26, JA-209-10¶¶66-70; JA-290¶349; *see Salix*, 2016 WL 1629341, at *15 (resignation during SEC investigation contributed to scienter). Also in 2018, Hain terminated Marla Hyndman. JA-290¶348.

---

[3] *Salix*, 2016 WL 1629341, at *15, also held that the departures contributed to a strong inference of scienter because the company "later issued restatements of its financial statements"—facts that are also present here. JA-231-35¶¶146-53.

Finally, the Order adopts the R&R's conclusion that "Plaintiffs' allegations regarding the demotion of Meiers and the terminations of Powhida, Ng, and Hyndman are irrelevant to the Individual Defendants' scienter because Plaintiffs do not allege the Individual Defendants were involved in those employment changes." SPA-18, JA-1021. But this ignores that (1) both Meiers and Ng worked under Defendant Carroll; and (2) Powhida and Hyndman, in turn, worked under and with Meiers. JA-208¶62, JA-220¶102, JA-289¶341.

***The Core Operations Doctrine Supports Scienter***. Core operations allegations "can provide supplemental support for . . . scienter." *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n. 3 (2d Cir. 2011). This doctrine "permits an inference that a company and its senior executives" have knowledge of information concerning "core" matters, which are those "critical to the long term viability" of a company and affect a "significant source of income*." In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013). Here, Hain's U.S. division was the Company's "core" business. The U.S. division generated about 56-60% of Hain's net sales, with UNFI and "Distributor 2" accounting for about 30% of U.S. sales during FY2014 through FY2016. JA-197¶25, JA-236-37¶158. Thus, it is implausible to suggest that the Individual Defendants were unaware of Hain's quarterly practice of giving concessions to UNFI and other distributors, and its ramifications on financial reporting. *See City of Warren Police*

36

*& Fire Ret. Sys. v. World Wrestling Ent. Inc.* ("*WWE*"), 477 F. Supp. 3d 123, at 136 (S.D.N.Y. 2020) ("virtually inconceivable" that CEO and other senior executives would not have been aware of termination of important contract). CW2 even referred to loading distributors with inventory at quarter-end as Hain's "core business practice." JA-213¶77. The inference is especially strong as to Simon and Carroll, who, as described *supra*, personally negotiated these arrangements with UNFI. JA218-19¶¶93-95. Carroll, in fact, was responsible for Hain's relationships with the two or three U.S. distributors. JA-198¶29, JA-202¶44, JA-291¶352.

Despite these allegations, the Order adopted the R&R's conclusion that the doctrine is "misplaced given that the SAC fails to plead separate facts raising an inference of scienter to be supplemented by the core operations doctrine." SPA-56-57, JA-1023. As described herein, however, the SAC includes an ample number of facts contributing to an inference of scienter, which are "supplement[ed]" by the SAC's core operations allegations. *Celestica*, 455 F. App'x at 14, n.3.

**The Magnitude of Hain's End-of-Quarter Sales to UNFI Supports a Strong Inference of Scienter**. The "magnitude" of the alleged fraud also supports a strong inference of scienter. *See Salix*, 2016 WL 1629341, at *16. The SAC alleges that end-of-quarter sales to UNFI alone accounted for about 15% of Hain's total U.S. sales each quarter. JA-210¶69. This concentration of sales with Hain's largest distributor suggests that the Individual Defendants were aware of the sales

concessions and their ramifications for the Company's financials and other disclosures. *See Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *3 (E.D.N.Y. July 26, 2016) ("[T]he magnitude of the alleged falsity[] contributes to the inference of scienter."). This inference is fortified by Plaintiffs' allegations that Simon and Carroll personally negotiated these arrangements with UNFI. *E.g.*, JA-218-19¶¶93-95.

***Hain's Significant Remedial Measures Support Scienter.*** Following Hain's restatement, the Company enacted significant "remediation efforts" including: (1) organizational changes in positions involving revenue recognition, finance, compliance, and legal; (2) formalizing processes for documenting period-end financial decisions; (3) improvements in revenue recognition policies; (iv) increased standardization of contract documentation and revenue analyses; (4) development of a review process and monitoring controls over contracts; and (5) instituting a revenue recognition and contract review training program focused on senior-level management, finance, and sales personnel. JA-293-95¶¶360-61. The breadth of the remediation measures reveals the severity of the accounting errors and material weaknesses within Hain's financial reporting. JA-295¶362; *see Mild v. PPG Indus., Inc.*, 2018 WL 6787351, at *7 (C.D. Cal. Dec. 21, 2018) (remedial measures and resignations supported inference of scienter).

38

*The SAC's CW Allegations Support Scienter.* As detailed herein, numerous CWs allege facts supporting a strong inference of scienter. *E.g.*, JA-213¶78, JA-217-19¶¶92-95, JA-298¶372 (CW2, CW4, CW6, and CW7 recounting facts alleging Simon and Carroll's direct involvement in negotiations); JA-200¶34, JA-219-20¶100-02, JA-223-25¶¶113-17 (allegations from CW1, CW3, CW7, and CW8 regarding Defendants' scienter relating to internal controls and GAAP violations); JA-222-24¶¶108-14, JA-226¶122, JA-289¶341, JA-289¶344 (CW1, CW3, CW6, and CW7 recounting the causes of departures and demotions). It is uncontroverted that "plaintiffs may rely on confidential witnesses to establish defendants' scienter for § 10(b) claims." *Celestica,* 455 F. App'x at 14. The District Court, however, held that "the CWs' allegations are too vague, speculative, and conclusory to support an inference of scienter." SPA-57. Yet, CW information may be credited at the pleading stage "even though some of [the] testimony is based on hearsay and indirect knowledge," *WWE*, 477 F. Supp. 3d at 132, and even if "none [of the CWs] had direct contact with any individual Defendant," *In re Avon Sec. Litig.*, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019).

The CWs here satisfy this Circuit's requirement that they be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Blanford*, 794 F.3d at 305; JA-199-201¶¶32-39. For example, CW7 reported directly—and

CW6 reported indirectly—to Meiers, while CW3 was Meiers' Executive Assistant who reviewed and formatted Hain's financial results. JA-200¶34, JA-200-01¶¶37-38. CW1 also reported indirectly to Meiers and was responsible for finances related to Hain's manufacturing costs associated with creating products in the United States. JA-199¶32; *see also* JA-199¶33, JA-200¶¶35-36, JA-201¶39 (describing CW2, CW4, CW5, and CW8).

In discrediting the CWs, the District Court also failed to account for the corroboratory nature of their allegations. *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 197 (S.D.N.Y. 2010) ("[C]orroboration from multiple [CW] sources also supports an inference of [] scienter. . . . CWs' information must be viewed together."). For example, CW3, as Meiers' Executive Assistant, was positioned to know why Meiers had Ng fired, and *both* CW1 and CW7 stated that Meiers had Powhida fired in order to pin blame on him. JA-223-24¶¶112-14. Further, CW6 stated that both Smith and Weiner left because of the off-invoice concessions (JA-226¶122), which is consistent with CW1's recollection that Smith resigned because his unwillingness to be Simon's "puppet" (JA-222¶109). Similarly, as detailed herein*,* CW2, CW4, CW6, and CW7 *all* recounted mutually reinforcing facts alleging Simon and Carroll were directly involved in improper negotiations. *See, e.g.*, JA-213¶78, JA-217-19¶¶92-95. Likewise, CW1, CW3, CW7, and CW8 corroborated each other in alleging Defendants' knowledge or recklessness

regarding Hain's lack of adequate internal controls. *See, e.g.*, JA-220-21¶¶102-04, JA-223-25¶¶112-17.

### 2. The SAC Alleges Motive and Opportunity

While Plaintiffs have no obligation to plead motive, *Tellabs*, 551 U.S. at 325, the SAC sufficiently does so by alleging the "concrete benefit[s] defendant[s] . . . realize[d] by [their] conduct." *Scholastic*, 252 F.3d at 74.

***Suspiciously Timed and Unusual Insider Stock Sales Support Scienter.*** Plaintiffs have alleged that Carroll's and Simon's suspicious stock sales during the Class Period support an inference of scienter. JA-291-293¶¶353-59; *see Scholastic*, 252 F.3d at 74 ("Unusual insider sales at the time of the alleged withholding of negative corporate news may permit an inference of bad faith and scienter."). Specifically, the SAC alleges that Carroll sold 308,916 shares of Hain stock during the Class Period for proceeds of more than $24.3 million. JA-292¶355. Including shares withheld by Hain in connection with option exercises or personal taxes, Carroll disposed of approximately 74% of the total shares, including shares converted from options, he had available for sale during the Class Period. JA-292¶358. Simon sold 983,798 shares of Hain stock during the Class Period for proceeds of over $80 million. JA-292¶355. Including shares withheld by Hain in connection with option exercises or personal taxes, and shares gifted, Simon disposed of more than 66% of the total shares, including options, he had available

for sale during the Class Period. JA-293¶359. The SAC shows that Carroll and Simon sold vastly more shares during the Class Period and collected significantly more in net proceeds than they did in the approximately three-and-a-half years immediately preceding the Class Period. JA-292¶355.

In adopting the R&R's analysis on stock sales, the District Court erred in concluding that these stock sales do not contribute to an inference of scienter. SPA-47-49. In its analysis, the R&R correctly observed that the "sales volume and the holdings portion" of Defendants insider stock sales "could favor an inference of scienter." JA-1010. However, the Order (through its adoption of the R&R on this issue) erred in three respects.

*First*, without any analysis, the R&R puts forth that scienter is undermined because "Plaintiffs[] [f]ail [t]o [a]llege [n]et [p]rofits." JA-1007. But "the amount of profit from the [insider] sales" is merely among the relevant factors to the scienter determination, not a dispositive factor. *Scholastic*, 252 F.3d at 74-75. In addition to the proceeds from the sales, Plaintiffs plead the percentages of holdings sold and that the sales were inconsistent with Carroll and Simon's prior trading history. JA-292-93¶¶355-59.

*Second*, the R&R cherry-picks fact-specific case law to conclude that the "[t]iming [o]f [t]he [s]ales [c]ut [a]gainst [s]cienter" through arbitrary metrics such as, "the final 100 days of the class period" as evidence that no insider trading was

42

suspicious. *See* JA-1008. Here, Plaintiffs allege that the Defendants engaged in a years-long fraudulent campaign to prop up their sales metrics. To adequately allege insider trading as an indication of scienter, Plaintiffs do not need to plead that Defendants earned the most possible profits of their insider trading because they sold at the stock price highs, or even that they knew exactly when the fraud would ultimately have to be disclosed. *See Scholastic*, 252 F.3d at 75 (even stock sales "for a relatively small sum" can "amount to unusual trading"). Here, Plaintiffs alleged that Defendants Simon and Carroll "reaped the rewards of their fraud while Hain's stock price was artificially inflated." JA-291-92¶353.

*Third*, the R&R ignores the enormous size of Defendants Simon and Carroll's insider sales, and instead homes in on the fact that neither Smith nor Conte sold Hain stock. *See* JA-1008-09. At most, this fact would undermine an inference of scienter only as to those two Defendants, and not Simon and Carroll (and therefore not Hain). *See WWE*, 477 F. Supp. 3d at 136-37 (strong inference of scienter where stock sale motive alleged against CEO who was one of three individual defendants); *Cannavest*, 307 F. Supp. 3d at 244 (strong inference of scienter with motive alleged only against CEO). Indeed, neither Smith nor Conte was at Hain for more than two years of the approximately three-and-a-half-year Class Period, whereas Simon and Carroll were each at Hain during the entirety of the Class Period and sold stock in suspicious amounts and at suspicious times. JA-197-98¶¶26-29.

43

The District Court recasts the R&R's improper fact-finding and other failings as merely fulfilling its duty of considering "competing inferences." SPA-47. The R&R, however, goes far beyond considering competing inferences, by discrediting or ignoring Plaintiffs' allegations while propping up Defendants' arguments. Thus, the District Court's adoption of the R&R on the issue of stock sales is erroneous. The enormous size of Simon and Carroll's stock sales—along with the sales volume and the holdings portion of Defendants insider stock stales—contribute to a strong inference of scienter when considered holistically with the SAC's other allegations. *Tellabs*, 551 U.S. at 322-23.

**_Defendants' Bonuses Support Scienter._** Due to Defendants' fraud, the Company's net sales, diluted earnings per share, and EBITDA adjusted, among other things, were materially overstated during the Class Period, allowing Simon and Carroll to receive undeserved and exorbitant compensation that was directly tied to the Company hitting targets for these metrics. JA-295-96¶¶363-65; *see Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326-27 (S.D.N.Y. 2018) (allegations that defendants' incentive packages were tied to, *inter alia*, the "rate at which [company] generated" new drug applications contributed to scienter). Specifically, in FY2015: (1) Simon's annual salary was $1,850,000; (2) his bonus, which was tied directly to the Company's purported financial metrics, was $5,565,725; and (3) he received $8,787,355 in stock awards, amounting to a total

compensation of $16,310,640. JA-295-96¶364. That year, according to Hain's proxy statement, Simon met his bonus target for net sales *by only 0.1%. Id.* Likewise, for FY2015, Carroll received: (1) an annual salary of $693,000; (2) a bonus tied to Company performance of $711,711; and (3) $1,119,854 in stock awards, amounting to total compensation of $2,553,575. *Id.*

The R&R—which the District Court adopted with no substantive analysis on this point (SPA-49)—mischaracterized these facts as allegations that Simon and Carroll merely "yearn[ed] for an increase in stock prices to improve executive compensation," which is a desire common to "virtually all corporate insiders." JA-1011. But the SAC does not allege that Defendants manipulated Hain's *stock price* to increase their bonuses. Instead, the SAC clearly alleges that Simon and Carroll were motivated to misrepresent Hain's *financial results* because their large cash bonuses and stock option grants *were closely tied to the Company's financial performance, including metrics that Defendants overstated.* JA-295¶363. The fact that Simon, in particular, was able to collect a significant bonus in part because he met his bonus target for net sales for FY2015 *by only 0.1% through an inflated metric* evidences Simon's motivation and opportunity to defraud. JA-295-96¶364.

### 3. The Required Holistic Analysis Establishes Scienter

While scienter may be established by alleging *either* "motive and opportunity" *or* "strong circumstantial evidence of conscious misbehavior or

recklessness," *Blanford*, 794 F.3d at 306—which Plaintiffs have done here—a plaintiff may also satisfy the scienter standard by alleging both categories of facts that, taken together and assessed "holistically," support a strong inference of scienter. *See Tellabs*, 551 U.S. at 323-36; *see also Shanawaz*, 348 F. Supp. 3d at 326-27 (scienter established by viewing motive and circumstantial evidence allegations "collectively"). Indeed, the relevant inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (emphasis in original). As such, this Court's prior ruling in this case ordered that "the district court should independently reassess the sufficiency of the scienter allegations, *considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity*." JA-866. Despite clear precedent and this Court's precise directive, the District Court once again failed to adequately consider the SAC's scienter allegations holistically.

The R&R includes one perfunctory paragraph posing as a "[c]ollective [e]valuation" of the SAC's scienter allegations, which includes scant analysis (JA-1024), and the Order assesses the motive-and-opportunity and circumstantial evidence prongs entirely separately and engages in no unified analysis (SPA-47-60).

46

The plethora of allegations in the SAC make Plaintiffs' inference of scienter "cogent and at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 324. With respect to circumstantial evidence, as described above, Plaintiffs' inference of scienter is supported by allegations of (1) Defendants' involvement in Hain's unsustainable sales practices; (2) GAAP and internal controls violations; (3) suspicious personnel changes; (4) core operations; (5) the magnitude of Hain's end-of-quarter sales to UNFI; (6) Hain's significant remedial measures; and (7) numerous allegations from CWs. Indeed, even when erroneously dismissing the SAC the first time, Judge Spatt observed that these allegations of circumstantial evidence "came quite close" to alleging a strong inference of scienter. JA-843. When combined with Plaintiffs' allegations regarding Defendants' insider stock sales and bonus structure, the SAC clearly alleges an inference that is "at least as strong as any opposing inference." *Tellabs*, 551 U.S. at 326.

## C. The District Court Abused Its Discretion in Denying Leave to Amend

Plaintiffs requested an opportunity to amend the SAC if the District Court granted Defendants' motion. JA-1064. The District Court, however, dismissed the SAC with prejudice, constituting an abuse of discretion.

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The permissive standard of Rule 15 is consistent with our strong preference for resolving disputes on the merits." *Loreley*, 797 F.3d at 190. This is

47

especially true where, as here, plaintiffs must meet a heightened pleading standard under Rule 9(b) and the PSRLA. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (liberal grants of leave to amend are "especially important in the context of the PSLRA"). In the Second Circuit, "[t]he rule . . . has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Here, the Order ignored this Circuit's precedent and deemed Plaintiffs' request "futile" because Plaintiffs had already been permitted more than one opportunity to replead and they had not "articulate[d] any new facts that would rectify the deficiencies in their pleadings." SPA-58-59.[4] But courts in this Circuit regularly permit plaintiffs to amend multiple times. *See, e.g.*, *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 470 (S.D.N.Y. 2018) (dismissing without prejudice and permitting a third amended complaint). Indeed, in *Reiner v. Teladoc Health, Inc.*, 2021 WL 4451407, at *17-18 (S.D.N.Y. Sept. 8, 2021), *report and recommendation adopted*, 2021 WL 4461101 (S.D.N.Y. Sept. 29, 2021)—the lone case the District Court cited (SPA-59)—the court rejected the plaintiffs'

---

[4] The District Court also noted that Plaintiffs had not requested leave to amend the SAC earlier in the litigation. SPA-59. But Plaintiffs did request leave to amend in their objection to the R&R (JA-1064), and the District Court points to no authority standing for the proposition that a plaintiff must first seek such relief from a magistrate judge before requesting leave to amend from the district court. Indeed, even an "informal[]" request to the district court may be sufficient. *Loreley*, 797 F.3d at 190.

request to file a *fourth* amended complaint; plaintiffs had already been permitted file a third amended complaint—which is exactly what Plaintiffs have requested here in. Further, Plaintiffs are not required to detail what facts they may add to an amended complaint when requesting leave to replead. *See Loreley*, 797 F.3d at 190-91 (even where "the request [to replead] gives no clue as to how the complaint's defects would be cured, . . . our analysis is directed at other underlying issues like notice and futility"). Even so, after briefing concluded on Plaintiffs' opposition to the R&R, Plaintiffs obtained transcripts from depositions taken in the SEC's investigation. Therefore, the District Court's dismissal with prejudice constitutes abuse of discretion.

## II.    ISSUES NOT REACHED BY THE DISTRICT COURT

Because the District Court found that Plaintiffs did not plead a strong inference of scienter and adopted the R&R as to its scienter-related recommendations, the District Court's Order only addressed whether Plaintiffs adequately pled actionable misstatements by stating that it "concurs" with the R&R's finding that Plaintiffs failed to plead an actionable misstatement or omission and did not address whether Plaintiffs adequately plead loss causation. SPA-45-46, SPA-60. It did not adopt the R&R's recommendations as to either element. SPA-60. If this Court exercises its "authority to decide issues that were argued before but not reached by the district court," *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90

(2d Cir. 2004), Plaintiffs respectfully request that the Court hold that the SAC adequately pleads actionable misstatements, loss causation, and claims under Section 20(a).

### A. The SAC Pleads Materially False and Misleading Statements

To support a finding of liability under Section 10 (b), there must be "an actual statement [made] that is either untrue outright or misleading by virtue of what it omits to state." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016). "[S]o-called half-truths—literally true statements that create a materially misleading impression—will support claims for securities fraud." *Id.* at 240. Although there is no general duty to disclose all material information, such a duty arises from Rule 10b-5's requirement to disclose "material fact[s] necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011). "Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014).

The R&R concluded that the SAC failed to plead any actionable misstatements. JA-997-1005. The District Court "concur[red]" with the R&R's conclusion but did not adopt the R&R's falsity-related recommendations, nor did it

engage in any analysis on the issue. SPA-45, 60. As detailed herein, the R&R erred in concluding that Plaintiffs failed to plead actionable misstatements.

### 1. Defendants Did Not Disclose Hain's Unsustainable Channel Stuffing Practices When Touting Hain's Financial Results

Defendants' statements regarding Hain's financial results and the drivers of those results were materially false and misleading because Defendants concealed "the whole truth," *Jinkosolar*, 761 F.3d at 250, by failing to disclose that those results were generated by unsustainable sales practices and accounting gimmicks, and did not reflect normal and sustainable demand. JA-238-57¶¶163-250. In so doing, Defendants misled "investors by saying one thing and holding back another." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 192 (2015). Defendants simultaneously attributed Hain's sales results to a variety of organic factors, such as: "strong brand contribution" (JA-239¶165); "expanded distribution" (JA-258¶251); "strong demand" and "momentum for organic and natural products" (JA-242¶181, JA-244¶190); a "diverse portfolio" of brands (JA-250¶219); "solid execution of [Hain's] operational initiatives" (JA-255¶242); "deeper penetration in key accounts" and "strong consistent consumer demand" (JA-259¶257, JA-260¶260, JA-262¶266).

Courts in this Circuit routinely find similar statements in analogous contexts to be actionable (and not puffery). *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statements that inventory situation was "in good shape" or "under control"

actionable and not puffery); *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *19-20 (S.D.N.Y. Sept. 30, 2021) (statement that bank was "making great progress" with compliance not puffery where bank had received contrary feedback from regulator); *Lematta v. Casper Sleep, Inc.*, 2022 WL 4637795, at *9-10 (E.D.N.Y. Sept. 30, 2022) (statements and omissions regarding how secure distribution and manufacturing network would significantly contribute to growth misleading where defendants knew growth rate was not sustainable and it had not positioned itself to achieve profitability).

As such, the R&R correctly concluded that these statements do not constitute puffery because they "specify the sources of the Company's already-achieved success in a manner designed to distinguish Hain from competitors." JA-991-92 (citing, *inter alia, Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 98 (2d Cir. 2016)). Likewise, the R&R correctly concluded that this Circuit recognizes causes of action that are predicated on the obligation to disclose that unsustainable sales practices contributed to unmanipulated earnings. JA-993-97. However, the R&R nonetheless incorrectly concluded that the SAC did not plead that these statements were false and misleading because (1) the SAC did not plead an absolute right of return and (2) Hain disclosed that it offered sales incentives and promotions. JA-998-1002. Both conclusions are erroneous and break with binding precedent.

52

First, the R&R's finding that Plaintiffs must plead an absolute right of return contravenes this Circuit's prior ruling in this matter, as detailed *supra,* Argument §I.A. Second, the R&R concluded that Defendants sufficiently disclosed their unsustainable end-of-quarter sales tactics, deeming Defendants' misstatements immunized by the truth-on-the-market defense. JA-1000-02. But to satisfy this defense, "the corrective information must be conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000). Further, whether the corrective information is sufficiently conveyed "is intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b) complaint" at the motion-to-dismiss stage. *Ganino*, 228 F.3d at 167. Here, the R&R determined that Hain's Class Period 10-Ks, which stated that Hain "[s]ales incentives and promotions" included "price discounts, slotting fees and coupons" and are used to "support sales of the Company's products," disclosed the unsustainable business practices. JA-1000-01. In doing so, the R&R failed to "draw all reasonable inferences in the plaintiff's favor." *Textron Inc.*, 14 F.4th at 147. The generic sales and incentive practices listed in the 10-Ks do not adequately disclose that the unsustainable practices were a "core business practice" to increase financial reporting. JA-213¶77. Nor do the cited disclosures sufficiently convey that part of these business practices included improper revenue recognition for the timing of

53

trade and promotional accruals, premature recognition of revenue on certain sales, and improperly classification of promotion expenses, all of which Hain admitted in its June 2017 restatement. JA-231-36¶¶146-56.

The precipitous stock decline following the corrective disclosures and the SEC's investigation also provide a reasonable inference that Hain's sales and incentives practices disclosed in the 10-Ks were not "conveyed with sufficient intensity and credibility to dispel the false impression" of Defendants' repeated misstatements. *Ganino*, 228 F.3d at 168.

### 2. Hain Issued False Financials for FY2014, FY2015, and Most of FY2016

Hain's financials were also materially misleading because Defendants recognized revenue in violation of GAAP, which artificially inflated Hain's reported financial results for FY2014 and FY2015, and the first three quarters of FY2016, all of which had to be restated because Hain failed to properly and timely account for the off-invoice sales concessions and incentives granted to distributors. JA-231-35¶¶146-54, JA-238-57¶¶163-250. Courts have generally held that "misreported financial data are . . . false statements of fact." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp 2d 562, 569 (S.D.N.Y. 2007); *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) ("In light of comScore's admission that it must restate its financial statements, there can be no dispute that the SAC pleads numerous false and misleading misstatements with respect to revenue,

revenue related metrics, and comScore's compliance with GAAP."). Under GAAP, "previously issued financial statements should be restated only to correct material accounting errors that existed at the time the statements were originally issued." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004). Indeed, "the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *Id*. Thus, the SAC adequately pleads that Defendants issued materially misleading financials for FY2014, FY2015, and for the first three quarters of FY2016.

The SAC pleads that Defendants' undisclosed sales practices—including offering distributors off-invoice concessions and discounts (*e.g.*, JA-209¶64, JA-211¶71, JA-211-12¶73, JA-215-17¶¶82-90), shipping excess inventory at quarter's end in order to make up for earnings shortfalls (*e.g.*, JA-208¶63, JA-211¶71, JA-213-15¶¶77-81), and warehousing excess product with distributors using credits rather than being sold to distributors (*e.g.*, JA-212¶75, JA-215¶¶83-84, JA-217¶89)—form the basis of the GAAP violations alleged in the SAC. These practices violated GAAP because Hain failed to properly recognize costs associated with sales promotions and incentives offered to customers. JA-210¶70, JA-238¶162, JA-285-87¶¶332-337.

The R&R fails to confront these arguments, incorrectly concluding that Plaintiffs abandoned their "challenges to Hain's reported financial numbers, the

methods used to calculate them, their compliance with SOX, and their compliance with GAAP." JA-989-90. But Plaintiffs did no such thing, as they have repeatedly maintained the falsity of Hain's financial statements. *See, e.g.*, JA-774 ("The SAC Adequately Alleges That Defendants Statements Concerning Hain's Financial Results Are Actionable"); JA-779 (listing Hain's accounting policies as categories of alleged misstatements and noting "Defendants do not challenge the falsity of these alleged misstatements, and have therefore waived this argument," and incorporating Plaintiffs' arguments supporting their falsity from previous briefings); JA-944 (listing Hain's financial results and its accounting policies and practices as categories of misstatements).

### 3. The SAC Pleads Misstatements Regarding Hain's Accounting Policies, Distributors' Inventory Levels, and Sales and Trade Promotions

Defendants failed to disclose Hain's unsustainable end-of-quarter sales tactics when making statements regarding (1) Hain's accounting policies and practices, (2) distributors' inventory levels, and (3) sales and trade promotions reporting.

***Statements Concerning Hain's Accounting Policies.*** Defendants' statements throughout the Class Period regarding Hain's accounting policies, including that there was "nothing wrong" with Hain's accounting (JA-267¶283, JA-271-73¶¶294-99), were materially false and misleading. *First*, as detailed *supra*, Argument § II.A.2, Hain's financial statements were not prepared in accordance with GAAP. *See*

*Pa. Pub. Sch. Emps.' Ret. Sys. V. Bank of America Corp.*, 939 F. Supp. 2d 445, 453 (S.D.N.Y. 2013) (falsely certifying compliance with GAAP can give rise to a material misrepresentation). *Second*, these statements concealed that Hain had to resort to unsustainable and inorganic practices to meet projections. Indeed, Hain manipulated its earnings so that it could beat its own guidance and Wall Street's consensus estimates, and did so by persuading customers to accept excess inventory through discounts and concessions (JA-205-08¶¶53-60, JA-209-17¶¶66-90, 233-35¶¶150-53) and by "smooth[ing]" Hain's numbers to make them "look pretty" (JA-209¶64, JA-220-21¶104). Without relying on these practices, Hain would have missed Wall Street estimates for six straight quarters. JA-234¶152. Because Defendants concealed Hain's reliance on these sales practices to meet projections, Defendants' statements about Hain's accounting policies were materially false and misleading. *See Omnicare,* 575 U.S. at 192; *Jinkosolar*, 761 F.3d at 250.

**Statements Concerning Inventory Levels at Distributors.** Throughout the Class Period, Defendants made a series of statements concerning inventory levels at Hain's distributors (JA-241¶174, JA-244¶190, JA-246¶198, JA-258¶251, JA-258-59¶254, JA-259¶257, JA-260¶260, JA-267¶281, JA-268¶286, JA-270¶291), which were materially false and misleading because Defendants did not disclose Hain's reliance on unsustainable sales tactics to generate sales. For example, during a conference on January 12, 2016, Carroll acknowledged that Hain's guidance cut was

"in the area of inventory," but described these problems as "one-offs." JA-267¶281. This statement is materially false and misleading because it fails to disclose that Hain's sales results depended on unsustainable sales practices and because it describes the inventory reduction at its distributors as aberrational, rather than something that was a product of Defendants' sales tactics that ultimately would catch up with the Company. The same is true of Defendants' other statements about the impact inventory reductions were having on Hain's financial results because these statements do not disclose "the whole truth" about Hain's sales practices and dependence on distributors' continued willingness to accept excess inventory. *See Jinkosolar*, 761 F.3d at 250; *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at*12 (D. Or. June 27, 2017), *report and recommendation adopted*, 2017 WL 3610523 (D. Or. Aug. 22, 2017) (statement that customer's inventory reduction was temporary is misleading when defendants know that the company's "pulling-in practice [is] no longer viable").

**Statements Concerning Hain's Sales and Trade Promotions.** Throughout the Class Period, Defendants made materially false and misleading statements about how Hain reported its sales and trade promotions. JA-271¶294, JA-272¶297, JA-273-74¶¶300-05. Contrary to the R&R's characterization, Plaintiffs do not base their claims here on the lack of an "eye-catching or negative phras[e]" describing Hain's promotions. JA-1001-02. Instead, the SAC adequately alleged that these statements

58

were false and misleading because Defendants failed to disclose that Hain's sales results depended on offering distributors off-invoice concessions and discounts and otherwise persuading them to accept product earlier than necessary—tactics that are inherently unsustainable. *See Omnicare,* 575 U.S. at 192; *Jinkosolar,* 761 F.3d at 250.

### 4. The SAC Pleads Misstatements Regarding Hain's Internal Controls

The SAC adequately pleads actionable misstatements regarding Hain's internal controls and certifications pursuant to Section 302 of the Sarbanes-Oxley Act (collectively referred to in the R&R as "SOX Statements"). JA-274-76¶¶306-09, JA-277-80¶¶313-17. Because Hain's SEC filings contained false and misleading statements, Defendants' certifications that they did not (JA-274-277¶¶306-12), pursuant to Section 302 of the Sarbanes-Oxley Act, are independent actionable false and misleading statements. *See In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1307 (D. Utah 2007). Further, Defendants disclosed in June 2017 that Hain's "internal control over financial reporting was not effective as of June 30, 2016" (JA-231-32¶147), and in December 2018 that Hain "lacked sufficient policies and procedures to provide reasonable assurances that [end-of-quarter] sales were accounted for properly" (JA-238¶162), thus establishing the falsity of the Company's SOX certifications and statements regarding the effectiveness of Hain's internal controls. *See Limantour v. Cray Inc.,* 432 F. Supp. 2d 1129, 1159-60 (W.D.

59

Wash. 2006) (SOX certifications were false and misleading based on the company's disclosure of internal controls weaknesses).

The R&R incorrectly determined that Defendants' accounting control statements were inactionable opinions because the SEC Consent Order did not indicate that "Defendants kn[ew] or reasonably should [have known] of different material facts about the Company's internal controls contemporaneously with the SOX Statements." JA-1004. As explained herein, numerous allegations from former employees, combined with the SEC's findings, sufficiently establish that the SOX Statements were materially false and misleading, and that Defendants possessed the sufficient level of scienter.

### 5.    The CW Accounts Support Plaintiffs' Falsity Allegations

The SAC's detailed allegations from *eight* CWs support Plaintiffs' falsity allegations. *See Textron*, 14 F.4[th] at 144-46 (district court erred in dismissing misstatements despite allegations from "a cadre of confidential informants"); *Blanford*, 794 F.3d at 306-07 (statements that inventory was at "appropriate levels" and "not building any excess" rendered false by CW allegations). The R&R failed to adequately consider these allegations, offhandedly dismissing them as "too conclusory and generic." JA-998-1000. But the CWs detail *specific, firsthand knowledge* of the "special deals" orchestrated and negotiated by certain of the Individual Defendants, including Simon and Carroll, with Hain's largest U.S.

60

distributors to make Hain's quarterly sales numbers. *E.g.*, JA-205-06¶¶53-55, JA-208¶¶62-63, JA-211-15¶¶71-81, JA-217-19¶¶91-97, JA-221¶105, JA-298¶¶372-73. The SEC Consent Order, which found that Hain offered extra-contractual sales concessions, corroborates the CW accounts. *E.g.*, JA-206¶56, JA-209-10¶¶66-68, JA-211-12¶¶71-73.

The R&R also failed to adequately consider the CW accounts of Hain's accounting and internal control practices. CWs detailed how Hain's COO would ensure that these sales would positively impact Hain's net sales by "creativ[ely]" accounting for the off-invoice concessions and incentives, such as booking distributor credits as money owed to Hain, and then "changing numbers" to make them "look pretty" before sending off these modified net sales figures to Hain's Controller for inclusion in the reported financials. JA-209¶64, JA-215-17¶¶82-90, JA-219-21¶¶98-104, JA-224-25¶¶115-17. If Hain employees questioned these accounting methods, they were told not to worry or ask about it and those who continued to ask questions, "dig into" or express disagreement with the COO-provided numbers, were fired. JA-220-24¶¶103-16. CW7, who reported directly to the then-COO Meiers, stated that Hain never had an internal audit department or compliance department during his tenure. JA-223-24¶¶112-15.

Hain's 2017 restatement of its financials confirms these allegations, as the Company admitted its "control environment did not sufficiently promote effective

internal control over financial reporting" and that "[t]he Company's internal controls to identify, accumulate and assess the accounting impact of certain concessions or side agreements on whether the Company's revenue recognition criteria had been met were not adequately designed or operating effectively." JA-231-32¶147. Hain's downward "revisions" to its Class Period financial reports corrected the COO's "creative" accounting for end-of-quarter sales incentives and promotions. JA-233¶¶148-49, JA-255¶¶240-41. For the same reasons, the SEC Consent Order also confirms the CW allegations. JA-236¶157, JA-237-38¶¶161-62.

Thus, the CW accounts provide sufficient detail "to support a reasonable belief" that Defendants' misstatements were materially false or misleading. *Novak*, 216 F.3d at 314 n.1.

## B. The SAC Adequately Alleges Loss Causation

Plaintiffs' burden of pleading loss causation "is not a heavy one." *Loreley*, 797 F.3d at 187. "The complaint must simply give Defendants *some* indication of the actual loss suffered and of a *plausible* causal link between that loss and the alleged misrepresentations." *Id.* Thus, "[t]here is no heightened standard for pleading loss causation," and Plaintiffs "need only plead a short and plain statement, pursuant to [Rule] 8(a)." *Freudenberg*, 712 F. Supp. 2d at 202. Further, loss causation may be shown by a "corrective disclosure" of the fraud, or by the

"materialization of [a] risk" that the fraud had concealed or obscured. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014).

Plaintiffs have satisfied this standard with respect to all three disclosures. On January 21, 2016, Hain revealed the resignation of Weiner, precipitating a decline in Hain's stock price by $2.64 per share, or over 7%. JA-302¶¶386-88. Then, on August 15, 2016, Defendants revealed that the Company would miss its deadline to file Hain's fourth quarter and year-end 2016 financial results, causing Hain's stock price to plummet $14.05 per share, or over 26%. JA-302-04¶¶389-93. Defendants have never argued that Plaintiffs failed to adequately allege loss causation as to these two disclosures and have thus conceded the issue. Finally, on February 10, 2017—*the only disclosure Defendants have ever challenged*—Hain announced that it had expanded the scope of its internal accounting review "to perform an analysis of previously-issued financial information" and also announced that the SEC had issued a formal order of investigation, as well as a document subpoena. JA-304¶394. On this news, Hain common stock declined $3.43 per share, or more than 8%. JA-305¶396. While Defendants have challenged whether this disclosure related to the prior misstatements (JA-353), the issue of loss causation is a "fact specific question appropriate for trial." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 715 (S.D.N.Y. 2013), and there is no requirement that Defendants' misstatements and the corresponding disclosure be "mirror image[s]," *Freudenberg*,

712 F. Supp. 2d at 202. Thus, at this stage in the litigation, Plaintiffs have satisfied this Circuit's requirements for pleading loss causation.

### C. The Complaint Adequately Alleges Section 20(a) Claims

The District Court dismissed Plaintiffs' Section 20(a)'s control person liability claims against the Individual Defendants solely because it rejected the underlying Section 10(b) claims. SPA-45-46. Because that ruling was erroneous, the District Court's dismissal of Section 20(a) claims must also be reversed.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court reverse the Order of the District Court and remand for further proceedings. To the extent that this Court finds the claims defective in a manner that could be cured by amendment, Plaintiffs respectfully request the action be remanded with leave to amend.

Dated: February 12, 2024

By: */s/ Christine M. Fox*
Carol C. Villegas
Christine M. Fox
James M. Fee
Matthew J. Grier
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
cfox@labaton.com
jfee@labaton.com

64

mgrier@labaton.com

*Counsel for Lead Plaintiff Rosewood Funeral Home and Co-Lead Counsel for the Class*

Robert V. Prongay
Leanne Heine Solish
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Tel.: (310) 201-9150
Fax: (310) 201-9160
rprongay@glancylaw.com
lsolish@glancylaw.com

Jonathan M. Rotter
GLANCY PRONGAY & MURRAY LLP
745 Fifth Avenue, 5th Floor
New York, NY 10151
Tel: (212) 935-7400
Fax: (212) 753-3630
jrotter@glancylaw.com

*Counsel for Lead Plaintiff Salamon Gimpel and Co-Lead Counsel for the Class*

Brian Schall
THE SCHALL LAW FIRM
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com

*Counsel for Lead Plaintiff Rosewood Funeral Home and Co-Lead Counsel for the Class*

65

### Certificate of Compliance with Type-Volume Limit,<br>Typeface Requirements, and Type-Style Requirements

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of 2d Cir. R. 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,968 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

Dated: February 12, 2024

*/s/ Christine M. Fox*
Christine M. Fox

SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Order Adopting Report and Recommendation,
    dated September 29, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-1

Judgment Appealed From, dated September 29, 2023 . . . . . . . . . . . . . . . . SPA-61

# SPA-1

FILED
CLERK

3:49 pm, Sep 29, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
In Re THE HAIN CELESTIAL GROUP INC.
SECURITIES LITIGATION                    ORDER ADOPTING
                                         REPORT & RECOMMENDATION
                                         16-CV-4581 (JS)(LGD)


--------------------------------x
```

Appearances

```
For Lead Plaintiff:  Carol C. Villegas, Esq.
Rosewood Funeral     Christine M. Fox, Esq.
Home¹                James M. Fee, Esq.
                     LABATON SUCHAROW LLP
                     140 Broadway
                     New York, New York  10005

                     Brian Schall, Esq.
                     THE SCHALL LAW FIRM
                     1880 Century Park East, Suite 404
                     Los Angeles, California  90067

For Lead Plaintiff:  Robert V. Prongay, Esq.
Salamon Gimpel²      Leannae Heine Solish, Esq.
                     GLANCY PRONGAY & MURRAY LLP
                     1925 Century Park East, Suite 2100
                     Los Angeles, California  90067

For Defendants:      John M. Hillerbrecht, Esq.
                     Jeffrey D. Rotenberg, Esq.
                     Marc A. Silverman, Esq.
                     DLA PIPER LLP (US)
                     1251 Avenue of the Americas
                     New York, New York  10020
```

**SEYBERT, District Judge:**

          Before the Court is the Report and Recommendation ("R&R"

or "Report") of Honorable Lee G. Dunst recommending that the

---

[1]  Counsel for Plaintiff Rosewood Funeral Home are also Co-Lead
Counsel for the Class.

[2]  Counsel for Plaintiff Salamon Gimpel are also Co-Lead Counsel
for the Class.

dismissal motions[3] of Defendants The Hain Celestial Group, Inc. ("Hain" or "the Company"), and of Irwin D. Simon ("Simon"), Pasquale Conte ("Conte"), John Carroll ("Carroll"), and Stephen J. Smith ("Smith", and together with Simon, Conte, and Carroll, the "Individual Defendants") (collectively, the "Defendants") be granted and that the Second Amended Consolidated Class Action Complaint ("SAC") (ECF No. 110) of Lead Plaintiffs Rosewood Funeral Home and Salamon Gimpel (the "Plaintiffs") be dismissed with prejudice. (See R&R, ECF No. 142.[4]) Plaintiffs object to Magistrate Judge Dunst's recommendations (see Objection (hereafter, "Objection" or "Obj."), ECF No. 144), to which Defendants have responded (see Response, ECF No. 145). For the reasons which follow, the Objections are OVERRULED, the R&R is ADOPTED as discussed herein, and the Dismissal Motions are GRANTED.

<u>BACKGROUND</u>

This federal securities class action asserting violations of the Securities Exchange Act (the "Act") is based upon Plaintiffs' allegations that, by their false and misleading

---

[3]  The dismissal motions of Hain (ECF No. 113) and the Individual Defendants (ECF No. 116) are addressed together; hereafter, they shall be referred to as the "Dismissal Motions". (See also Hain Support Memo, ECF No. 114; Hain Reply, ECF No. 120; Ind. Defs. Support Memo, ECF No. 117; Ind. Defs. Reply, ECF No. 121; Suppl. Support Memo, ECF No. 134; Opp'n re: Hain, ECF No. 118; Opp'n re: Ind. Defs., ECF No. 119; Suppl. Opp'n, ECF No. 136.)

[4]  The Court assumes the parties' familiarity with the terms of art defined in the R&R, which are adopted herein.

statements and omissions, the Defendants purposely concealed the Company's declining business due to new competitors in the healthy food and personal care products market, which the Company had previously dominated.   As the Second Circuit summarized it, Plaintiffs' theory of the case is: "Defendants made statements attributing Hain's high sales volume to strong consumer demand, while omitting to state that increased competition had weakened consumer demand and that Hain's high sales volume was achieved in significant part by the offer of unsustainable channel stuffing incentives." In re Hain Celestial Grp., Inc. Sec. Litig., 20 F.4th 131, 137 (2d Cir. 2021). (See also Obj. at 6.)  The Court presumes the parties' familiarity with both the underlying factual background and extensive procedural background of this case. Indeed, in the absence of any objections to the Magistrate Judge's recitation of the Factual Background (see R&R at 1-24) and the Procedural History of the case (see id. at 24-28), which the Court finds to be accurate, thorough, and clear of error, said Factual Background and Procedural History are adopted in their entirety and incorporated herein by reference.  See Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) (where no party challenges magistrate judge's recitation of factual and procedural backgrounds of the case, upon clear error review, adopting and incorporating same into court's order).

# SPA-4

For ease of reference, the Court notes the following. First, only two causes of action remain: Plaintiffs' first cause of action alleging Defendants' violations of Section 10(b) of the Act and Rule 10b-5(b) promulgated thereunder (hereafter, "Count I" or the "Rule 10(b) Claim"); and Plaintiffs' corresponding third cause of action alleging the Individual Defendants violated Section 20(a) of the Act (hereafter, "Count III" or the "Section 20(a) Claim"). Second, Defendants' Dismissal Motions are before this Court upon remand by the Second Circuit "for reconsideration of Defendants' motion to dismiss the Second Amended Complaint," with this Court to "consider afresh whether the [SAC] adequately stated a claim under Rule 10b-5(b)" and to "reassess the sufficiency of the scienter allegations, considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity" because "the strength of circumstantial allegations required to plead scienter varies depending on whether there are also allegations of motive and opportunity on the part of corporate officers to commit fraud." Hain Celestial, 20 F.4th at 138 (emphasis added) (citing ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 198-99 (2d Cir. 2002)).

DISCUSSION

I.   Applicable Law[5]

   A. Rule 72(b)

      A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). Any portion of such a report and recommendation to which a timely objection has been made is reviewed de novo. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3). "Objections to a report and recommendation must be 'specific and are to address only those portions of the proposed findings to which the party objects.'" Fossil Grp. Inc. v. Angel Seller, LLC, No. 20-CV-2441, 2021 WL 4520030, at *2 (E.D.N.Y., Oct. 4, 2021) (quoting Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (cleaned up)). General objections, or "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review." Owusu v. N.Y.S. Ins.,

_____

[5]  The Court adopts the legal standards stated by Magistrate Judge Dunst in his Report as to: (1) a Rule 12(b)(6) dismissal motion (see R&R at 28-29); (2) the applicable pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure and under the PSLRA (see id. at 29); (3) making out a claim under Rule 10b-5(b) (see id.); and (4) stating a Section 20(a) claim under the Act (see id. at 29-30), to which no objections have been raised, which are not clearly erroneous, and which are incorporated herein by reference.

**SPA-6**

655 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2009) (quotations, alterations and citation omitted); see also Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 726 (S.D.N.Y. 2011), aff'd sub nom Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir. Nov. 6, 2014) ("[W]hen a party makes only conclusory or general objections [] the Court will review the Report strictly for clear error.[] Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (cleaned up)). Any portion of a report and recommendation to which no specific timely objection is made, or to which only general, conclusory or perfunctory objections are made, is reviewed only for clear error. Owusu, 655 F. Supp. 2d at 312-13; see also Bassett v. Elec. Arts, Inc., 93 F. Supp. 3d 95, 100-01 (E.D.N.Y. 2015).

### B. Rule 10b-5(b) Claims[6]

Rule 10b-5(b) provides that, in connection with the purchase or sale of any security, it is "unlawful for any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. To support a claim under that rule, a plaintiff must plead: (1) a material misrepresentation or omission (i.e., materiality and falsity), (2) scienter, (3) a connection between the misrepresentation or omission and the purchase

---

[6] Provided here merely for the convenience of the reader. (See supra note 5.)

> or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation. <u>See, e.g.</u>, <u>Noto v. 22nd Century Grp., Inc.</u>, 35 F.4th 95, 102 (2d Cir. 2022). [Further], "[t]he first two elements must be pled with heightened specificity pursuant to the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 9(b)." <u>Id.</u>

(R&R at 29 (second set of brackets added).)

II.   <u>Application</u>

A. <u>The R&R</u>

Cognizant of the Circuit Court's directives, in making his Report, Magistrate Judge Dunst proceeded to consider as if for the first time Plaintiffs' SAC. Upon that "afresh" consideration, the Magistrate Judge made the following findings and recommendations.

1. <u>As to Count I</u>

a. <u>Abandoned Portion of the Claim</u>

Initially, "to the extent [Count I] challenges Hain's financial results, the reported methods of calculating them, their compliance with SOX, and their compliance with GAAP," the Magistrate Judge found Plaintiffs abandoned those claims; therefore, he recommends they be dismissed. (R&R at 31.)

[Remainder of page intentionally left blank.]

b. <u>The Attribution Statements Are Not Actionable</u>

Magistrate Judge Dunst found the Attribution Statements,[7] reviewed in context, were not puffery and, therefore, "trigger[ed] a duty for Hain to disclose any information necessary to make them not misleading." (R&R at 32-33 (footnote omitted).) In making his recommendation, the Magistrate Judge rejected the Company's reliance on the Circuit Court's <u>Boca Raton</u> decision (<u>id.</u> at 34-37 (discussing <u>Boca Raton Firefighter's and Police Pension Fund v. Bahash</u>, 506 F. App'x 32 (2d Cir. 2012)), since other "cases make clear[ that,] because Defendants 'put the sources of [Hain's] revenue at issue . . . [,] the alleged failure to disclose the true sources of such revenue could give rise to liability under Section 10(b).'" (<u>Id.</u> (quoting <u>In re Van der Moolen Holding N.V. Sec. Litig.</u>, 405 F. Supp. 2d 388, 401 (S.D.N.Y. 2005); further citation omitted) (first and third set of brackets added).)

Then, as to Plaintiffs' "challenges [to] the Company's statements as materially false or omissive for failing to disclose that Hain relied on 'unsustainable practices' to generate sales and/or that Hain lacked adequate accounting controls," the

---

[7]   For convenience, the Court notes, the Attribution Statements where "statements in Hain's SEC filings between November 2013 and May 2016" that attributed the Company's financial results to various causes, <u>i.e.</u>: "strong brand contribution;" "expanded distribution;" the "strong demand" and "momentum" for organic and natural products; Hain's "diverse portfolio" of brands; and/or "solid execution of [Hain's] operational initiatives". (R&R at 31.)

Magistrate Judge found Plaintiffs failed to plead an actionable misstatement or omission.  (R&R at 38.)  Regarding the "unsustainable practices" branch of the recommendation, Magistrate Judge Dunst stated two ground for finding the relevant statements, as pled, were not actionable:  (a) as to Plaintiffs' contention that the Company offered its customers an absolute right of return, Plaintiffs misplaced their reliance on CWs to support this claim; the Magistrate Judge found the CWs' statements to be "too conclusory and generic to support an allegation that Hain relied on the right of return as alleged in the SAC" (R&R at 39-40; see also id. at n.18); and (b) the Company disclosed other offered sales incentives and promotions, obviating any further need for disclosure (see id. at 41-42).  Regarding the accounting controls branch of the recommendation, Magistrate Judge Dunst rejected Plaintiffs' reliance on the SEC Order, finding (c) the SOX Statements were nonactionable opinion statements of management since (i) Plaintiffs did not plead the Company failed to evaluate its internal controls (see R&R at 43-44), and (ii) the SEC Order did not indicate that the Individual Defendants contemporaneously knew of any deficiencies in the Company's internal controls when they signed the SOX certificates (see id. at 44-45); and (d) contrary to Plaintiffs' allegations of falseness and misleadingness based upon (i) the Company's November 2016 disclosure that the Audit Committee's investigation found no

evidence of intentional wrongdoing regarding the Company's accounting practices, and (ii) Simon's related comments regarding the Company's commitment to both the transparency of its financial reporting and the strengthening of its internal controls, such allegations were undermined by and not, as Plaintiffs argued, supported by the SEC Order (see id. at 45-46).

### c. Plaintiffs Fail to Plead Scienter

As to the scienter element of Plaintiffs' Rule 10(b) Claim, the Magistrate Judge found Plaintiffs failed to plead that claim in accordance with the applicable heightened pleading standards. (See generally R&R at 47 ("A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)).) In making his scienter findings, Magistrate Judge Dunst examined Plaintiffs' alleged facts first as to the Individual Defendants and then as to the Company. The Individual Defendants' scienter finding was further broken down into three subcategories: (a) whether the Individual Defendants had both motive and opportunity to commit the alleged fraud (hereafter, the "Motive & Opportunity Prong") (see R&R at 47-54); (b) whether there was strong circumstantial evidence of conscious misbehavior or recklessness by the Individual Defendants (hereafter, the "Misbehavior or Recklessness

Prong") (see id. at 54-65); and (c) a collective evaluation of the proffered bases for finding scienter (hereafter, the "Collective Evaluation Prong") (see id. at 65).

(i)   Motive & Opportunity Prong

More particularly to the Motive & Opportunity Prong, which requires allegations showing the Individual Defendants benefitted in some concrete and personal way from the purported fraud (see R&R at 47 (quoting ECA, 553 F.3d at 198; further citation omitted), the Magistrate Judge found unpersuasive Plaintiffs' reliance upon the Individual Defendants' (a) stock sales, (b) compensation and bonuses, and (c) use of Company stock in certain acquisitions.  (See id. at 47-48.)

As to Stock Sales: Scienter may be shown "when an insider makes a misrepresentation to sell shares at a profit." (R&R at 48 (citing ECA, 553 F.3d at 198).)  However, the sale must be unusual or suspicious, and courts consider factors such as "the amount of profit from the sales, the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling." City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp., 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020) (further citation omitted) (quoted in R&R at 48).  Further, the timing of insider stock sales may also be a relevant factor.  (See R&R at 48 (quoting Glaser v. The9, Ltd., 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011)).)  Against that backdrop, Magistrate Judge Dunst found:

Plaintiffs' SAC did not identify the profits realized by Carroll or Simon from their respective stock sales, undermining an inference of motive and opportunity (see id. at 48-49); the timing of Carroll's and Simon's stock sales were each well outside the first allegedly negative disclosure in January 2016 and before the end of the Class Period, undermining any inference of scienter (see id. at 49); and, there are no allegations that the other Individual Defendants, Smith and Conte, or any other insiders, made suspicious stock sales during the Class Period, undermining a strong inference of scienter (see id. at 49-50). Yet, as to the number and percentage of shares sold by Carroll and Simon, the Magistrate Judge accepted "Plaintiffs' calculations as true and assume[d] (without deciding) that this factor supports an inference of scienter." (Id. at 50.) Nonetheless, when viewed collectively Magistrate Judge Dunst found "Plaintiffs' 'motive and opportunity' allegations fail[ed] to raise an inference of scienter as compelling as the competing non-fraudulent inference." (Id.) Thus, "even when insider stock sales are substantial," because Plaintiffs "fail[ed] to plead (1) profits from the challenged sales, (2) that any challenged sales occurred close in time to corrective disclosures or the end of the [C]lass [P]eriod, and (3) that more than two executives allegedly engaged in unusual or suspicious sales," they "have not sufficiently alleged that

# SPA-13

Carroll and Simon's stock sales reflect motive sufficient to establish their scienter." (R&R at 51.)

As to Bonuses: Magistrate Judge Dunst observed that because virtually all corporate insiders share the desire for an increase in stock prices to improve their executive compensation, the yearning for such an increase does not support scienter. (See R&R at 52 (citing S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir. 2009)).) Thus, he found Plaintiffs' allegations in this regard insufficient to establish motive. (See id. (quoting Lipow v. Net1 UEPS Techs., Inc., 131 F. Supp. 3d 144, 160 (S.D.N.Y. 2015)).)

As to Using Company Stock for Acquisitions: Recognizing that the inflation of stock prices may inure to the benefit of stockholders in the acquisition context, Magistrate Judge Dunst further acknowledged that using artificially inflated stocks may, in certain situations, be sufficient to establish scienter, but that "[t]he requisite showing requires 'extremely contextual' allegations demonstrating 'a unique connection between the [alleged] fraud and the acquisition.'" (R&R at 52-53 (quoting ECA, 553 F.3d at 201 n.6).) The Magistrate Judge found Plaintiffs' allegations in this regard to be conclusory. (See id. at 53.) Moreover, the time between the acquisitions and the first alleged corrective disclosure was too attenuated, and more so as to the end of the Class Period. (See id.) Similarly, "Plaintiffs offer

nothing to demonstrate that Defendants made material misstatements or omissions to inflate Company stock for any of the acquisitions." (Id. at 53-54.)

(ii) Misbehavior or Recklessness Prong

Continuing, and specifically to the Misbehavior or Recklessness Prong, Magistrate Judge Dunst framed his analysis by stating Plaintiff is also seeking "to establish scienter through circumstantial evidence of recklessness, which requires 'a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care.'" (R&R at 54 (quoting SEC v. Sourlis, 851 F.3d 139, 144 (2d Cir. 2016); further citation omitted).) Of the four methods by which a plaintiff can show a strong inference of the requisite recklessness, the Magistrate Judge examined Plaintiffs' theory, i.e., that Defendants knew facts or had access to information suggesting their public statements were not accurate. (See id. at 54-55.) He further explained that "[b]ecause Plaintiffs . . . have not shown motive (even taking the motive allegations collectively), "the circumstantial evidence of conscious misbehavior must be correspondingly greater." (Id. at 55 (quoting Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibbs Co., 28 F.4th 343, 355 (2d Cir. 2022)).) Magistrate Judge Dunst proceeded to analyze each of the five bases Plaintiffs alleged as scienter of known but undisclosed

information, to wit: (a) an absolute right-to-return; (b) the Company's reliance on sales incentives and promotions; (c) the SOC certifications and internal controls; (d) personnel changes; and (e) access to reports and core U.S. business.

As to an Absolute Right-of-Return: In his Report, Magistrate Judge Dunst states: "The SAC's allegations regarding the right to return rely entirely on the CWs." (R&R at 55.) However, the Magistrate Judge found the CW-based allegations "are too sparse" to show the Individual Defendants actually possessed the knowledge highlighting the falsity of the subject public statements and are "too vague, speculative, and conclusory to contribute to an inference of scienter." (Id. at 55-56 (providing examples of deficient allegations).)

As to the Company's Reliance on Sales Incentives and Promotions: Because the Magistrate Judge found Defendants contemporaneously disclosed the Company's use of incentives and promotions to support sales, he concluded that determination precludes finding scienter. (R&R at 56.) Moreover, since such a practice is common, offering sales and promotions to meet revenue targets "contribute little to a strong inference of fraud." (Id. (quoting S.E.C. v. Espuelas, 698 F. Supp. 2d 415, 430 (S.D.N.Y. 2020) (cleaned up); further citations omitted).)

As to the SOX Certifications and Internal Controls: Because Plaintiffs relied upon events that occurred after the

# SPA-16

Individual Defendants signed the subject SOX certificates, Magistrate Judge Dunst found Plaintiffs' allegations deficient since they did "not adequately allege[] [Defendants] had any knowledge of 'glaring accounting irregularities' when they executed the SOX certifications." (R&R at 58 (quoting Reilly v. U.S. Physical Therapy, Inc., No. 17-CV-2347, 2018 WL 3559089, *19 (S.D.N.Y. 2018)).)   And, regarding internal controls, the Magistrate Judge stated, "[t]hat Hain undertook remedial efforts after the Class Period to strengthen its internal controls 'was a prudent course of action that weakens rather than strengthens an inference of scienter.'" (Id. (quoting Slayton v. Am. Express Co., 604 F.3d 758, 777 (2d Cir. 2010)).)   Accordingly, based upon the facts alleged in the SAC, Magistrate Judge Dunst found the more plausible inference to be drawn from the Company's inadequate internal controls was corporate mismanagement, which is unactionable. (See id. at 58-59 ("[I]t is well established that mismanagement is not actionable under the securities laws." (quoting Woolger v. Kingstone Cos., Inc., 477 F. Supp. 3d 193, 240 (S.D.N.Y. 2020)).)

As to Personnel Changes: Magistrate Judge Dunst observed that terminations and resignations of corporate executives alone is not enough to infer scienter; rather, the employment change must be highly unusual and suspicious. (See R&R at 59 (citations omitted).) Thus, a plaintiff needs to plead facts

showing the employment change is either somehow tied to the alleged fraud or alerts others to the alleged fraud; alternatively, the employee's scienter must be otherwise evident. (See id.)  Of the five Company executives upon whose employment changes the Plaintiffs relied in alleging scienter, Magistrate Judge Dunst found none availing.  First, Smith's September 2015 resignation after only two years with the Company and subsequent year-plus period of unemployment, without more, did not support scienter. (See R&R at 60.)  Nor was CW-1's unsupported belief that Smith was forced out of the Company a sufficient "something more" to show scienter.  (See id.)  Second, Carroll's March 2017 change in positions was not highly unusual or suspicious, especially considering Plaintiffs' own allegations that Carroll regularly changed positions within Hain.  (See id.)  Additionally, the March 2017 move to another position could be viewed as a promotion and not a demotion, since the new position concerned "Global Brands" for all of Hain.  (See id. at 61.)  Third, while Conte resigned as CFO and Executive Vice President of Finance "on June 22, 2017[,] the same day Hain filed the 2016 Form 10-K that announced it was taking remedial measures to correct material weaknesses in its internal controls," Plaintiffs' SAC lacks "sufficient facts to support that Conte acted with scienter in connection with the challenged statements, that his resignation somehow alerted anyone at Hain to the alleged fraud, or that his scienter was otherwise

evident." (Id.)   The Magistrate Judge observed the "more cogent inference" was Conte resigned because of his negligent oversight of responsible employees or the positive optics his resignation would provide.   (See id.)   Fourth, while Plaintiffs allege the Company's June 2018 announcement of Simon's leaving, they "do not explain why [said] resignation supports an inference of scienter." (Id. at 62.)   Absent an explanation, the timing of Simon's departure from Hain cuts against an inference of scienter since it was 16 months after the Class Period ended.   (See id.)   "Finally, Plaintiffs' allegations regarding the demotion of Meiers and the terminations of Powhida, Ng, and Hyndman are irrelevant to the Individual Defendants' scienter because Plaintiffs do not allege the Individual Defendants were involved in those employment changes."   (Id. (citations omitted).)

As to Access to Reports & Core U.S. Business:   First, the Magistrate Judge summarily found the SAC allegations that the Individual Defendants "had knowledge of" or "had full and unfettered access to" all materials regarding the Company's U.S. business were generic in nature, thereby rendering them insufficient to raise the requisite inference of scienter.   (R&R at 63.)   Second, Magistrate Judge Dunst rejected Plaintiffs' reliance on the "core operations" doctrine to establish scienter, since that doctrine is more appropriately viewed as providing support for, but not as an independent basis of, scienter.   (See

id. at 64.)   In the absence of other allegations raising an inference of scienter, e.g., "specific factual allegations linking the Individual Defendants to the alleged fraud," "Plaintiffs' core operations doctrine arguments fail." (Id. at 65 (quoting Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 320-21 (S.D.N.Y. 2021) (cleaned up)).)

### (iii) Collective Evaluation Prong

Finally, as to the Collective Evaluation Prong, in undertaking that evaluation of Plaintiffs' alleged circumstances and situations supporting scienter, Magistrate Judge Dunst stated "[t]he SAC 'will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference once could draw from the facts alleged.'" (R&R at 65 (quoting Tellabs, 551 U.S. at 324 (emphasis added)).) He found the collective review of the scienter allegations wanting. Highlighting the Individual Defendants' signings of the Class Period SOX certifications regarding the sufficiency of the Company's internal controls, which controls the Company undertook to self-audit, and which the Company self-reported to the SEC, as well as, thereafter, admitting said controls had been deficient, Magistrate Judge Dunst concluded "'any reasonable shareholder would deem the inference of scienter to be far less compelling than an inference of, at most, non-actionable mismanagement and negligence' on the part of the Individual Defendants."   (Id.

(quoting <u>Sachsenberg v. IRSA Inversiones v. Representaciones Sociedad Anonima</u>, 339 F. Supp. 3d 169, 185 (S.D.N.Y. 2018); citing <u>In re Wachovia Equity Sec. Litig.</u>, 753 F. Supp. 2d. 326, 367 (S.D.N.Y. 2011) (finding scienter allegations collectively reflected "[b]ad judgment and poor management . . . not fraud")).)

In making his scienter finding as to Hain, because "Plaintiffs asked the Court to find corporate scienter by 'imput[ing] each Individual Defendant's scienter to Hain'" (R&R at 66 (quoting Suppl. Opp'n at 6)), since the Magistrate Judge found "Plaintiffs failed to plead a strong inference of scienter on the part of the Individual Defendants," he likewise found a lack of Company scienter. (<u>Id.</u>) Magistrate Judge Dunst concluded that, while not asked to do so, he would further find Plaintiffs could not establish corporate scienter by way of a false statement that is exceedingly dramatic. (<u>See</u> <u>id.</u> at 66-67.)

In sum, Magistrate Judge Dunst recommended "the Court find the unabandoned portion of the SAC's Count I fail[s] to state a claim" because Plaintiffs failed to plead an actionable misstatement or omission and failed to raise a strong inference of scienter as to any of the Defendants. (<u>Id.</u> at 67.)

2. <u>As to Count III</u>

Finding "Plaintiffs failed to plead their predicate Section 10(b) of Rule 10b-5 violation," Magistrate Judge Dunst

correspondingly recommended the dismissal of Plaintiffs' Section 20(a) Claim, _i.e._, Count III.  (R&R at 67.)

### 3. As to Dismissal with Prejudice

Finally, Magistrate Judge Dunst recommended the Dismissal Motions be dismissed with prejudice since "Plaintiffs had numerous opportunities to plead a case adequate to survive dismissal."  (R&R at 67.)  Moreover, after the Circuit Court "vacated the 2020 Dismissal Decision, Plaintiffs have neither sought leave to further amend the SAC nor communicated that they possess facts that would bolster it."  (Id. at 68.)

### B. The Parties' Positions

#### 1. Plaintiffs' Objections

Broadly, Plaintiffs object to their purported abandonment of claims concerning Hain's false financial results (hereafter, the "Abandonment Recommendation"), and much of Magistrate Judge Dunst's falsity analysis (hereafter, the "Falsity Recommendation") and all his scienter analyses (hereafter, the "Scienter Recommendation").  (See Obj. at 1, 3.)

##### a. Re: The Abandoned Claims Recommendation (see R&R at 30-31)

While acknowledging "a plaintiff may abandon a claim either affirmatively or effectively by failing to oppose arguments raised in defendants' motions to dismiss," Plaintiffs argue neither scenario occurred in this instance.  (Obj. at 7-8 (citing

# SPA-22

R&R at 30-31).  "First, Plaintiffs could not have effectively abandoned these statements, because Defendants never challenged their falsity." (Id. at 8 (citing Dismissal Motions; Reply, ECF No. 120; Suppl. Support Memo, ECF No. 134; Defs. App. Br.).) Plaintiffs further argue "such an argument would be futile" in light of the Company's restatement of financial results and its "post-Class Period admissions that it suffered from material weaknesses in financial reporting," as well as the SEC's finding the Company lacked sufficient policies and procedures providing reasonable assurances that quarter-end sales were properly accounted. (Id. (citing SAC at ¶¶ 146-52, 162; In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("[T]he mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made.")).)  Moreover, Plaintiffs contend they have "repeatedly maintained the falsity of Hain's financial statements," supporting their maintenance-of-position argument with citations to previous briefings. (Id. (citing Opp'n, ECF No. 118, at 11, 16 (listing Hain's accounting policies as categories of alleged misstatements; asserting "Defendants do not challenge the falsity of these alleged misstatements, and have therefore waived this argument"; and incorporating Plaintiffs' previous falsity arguments made in earlier briefs); Pls. App. Br.; Suppl. Opp'n, ECF No. 136, at 3).)  Plaintiffs would assign error to the

# SPA-23

Magistrate Judge's reliance on their separate responsive explanation to Defendants' materiality arguments in making his Abandonment Recommendation, elucidating that in response to Defendants' materiality arguments, Plaintiffs argued "Defendants' omission of their reliance on unsustainable practices . . . were qualitative factors that significantly altered the total mix of altered information for investors" (Obj. at 9 (citing Opp'n at 15)); read in context, that explanation should not be interpreted as Plaintiffs abandoning their challenge to Hain's financial results. (Id.)

> b. <u>Re: The Falsity Recommendation</u>
> (<u>see</u> R&R at 38-46)

Unsurprisingly, Plaintiffs do not object to Magistrate Judge Dunst's recommended finding that the Company's Attribution Statements are not puffery. (<u>See</u> Obj. at 10-11 (citing R&R at 32-33).) However, they object to the Magistrate Judge's further finding that the Attribution Statements are, nonetheless, not actionable "because Hain disclosed in its Class Period [Form] 10-Ks that the Company 'undertook sales incentives and promotions.'" (Obj. at 10 (citing R&R at 41-43).) Plaintiffs contend that, as Judge Spatt did, Magistrate Judge Dunst misunderstands the requirements of a Rule 10b-5(b) claim, as well as Plaintiffs' theory of their claim by, instead, focusing on whether Plaintiffs sufficiently alleged a right-of-return, thereby erring. (<u>See id.</u>

at 12 (citing <u>Hain Celestial</u>, 20 F.4th at 137).)   They further argue that the Magistrate Judge erred in finding the Company's disclosures in its Class Period Form 10-Ks sufficiently disclosed the unsustainable business practices of which Plaintiffs complain, <u>i.e.</u>, its off-invoice sales concessions (variously referred to as "channel stuffing", "loading", and "pull-in sales") which disclosures Plaintiffs assert were inadequate since, <u>e.g.</u>, the cited disclosures failed to sufficiently convey that part of Hain's business practices included improper revenue recognition for the timing of trade and promotional accruals, as well as premature recognition of revenue of certain sales.   (<u>See id.</u> at 13-14 (citing R&R at 41-42).)   Additionally, after Hain's 2016 Disclosure, the Company's stock decline and the SEC's investigation provided a reasonable inference that Hain's unsustainable business practices were not conveyed with sufficient intensity and credibility to dispel the false impression of Defendants' Attribution Statements. (<u>Id.</u> at 14 (quoting <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 168 (2d Cir. 2000)).)   Regarding Hain's accounting controls misstatements, Plaintiffs maintain the Recommendation is improperly limited to examining the SEC Order because of the prior error of finding Plaintiffs abandoned its accounting statement allegations.   (<u>See id.</u> (citing R&R at 43 and 43-46).)   Plaintiffs also argue the Report's recommendation that the SEC Order did not indicate "Defendants knew or should have known of different

# SPA-25

material facts about the Company's internal controls contemporaneously with the SOX Statement," is error. (Id. at 15 (quoting R&R at 45).)  They posit that, in combination with their CWs' accounts, the SEC's findings in its Order "sufficiently establish that the SOX Statements were materially false and misleading, and give rise to a strong inference that the Defendants knew, or reasonably should have known, of their misleading nature." (Id.)  Relatedly, Plaintiffs insist the Report fails to adequately consider numerous allegations from their CWs, which provide detailed, specific, firsthand knowledge of the Company's extra-contractual sales concessions and its accounting and internal control practices and which the SEC Order confirmed.  (See id. at 15-16.)  In sum, according to Plaintiffs, the Report improperly failed to find Plaintiffs' CWs' accounts provided sufficient facts to support an inference that (a) Defendants' Attribution Statements, (b) the Company's (i) reported financial results, (ii) accounting policies and practices, and (iii) sales and trade promotions reporting, and (c) the SOX Statements were materially false or misleading.  (Id. at 16 (footnote omitted).)

### c. Re: The Scienter Recommendations

Plaintiffs object to the Report's rejection of all Plaintiffs' individual scienter arguments and the Report's less-than-meaningful assessment of Plaintiffs' scienter allegations as a whole, especially in light of Judge Spatt's having previously

determined those allegations (found in Plaintiffs' Amended
Consolidated Class Action Compliant (ECF No. 75)) to have come
"quite close" but falling "just short" of supporting a strong
inference of scienter, and the Circuit Court's directive that,
upon remand, this Court "consider[] the cumulative effect of the
circumstantial allegations of intent together with the pleaded
facts relating to motive and opportunity." (Obj. at 17 (first
quoting In re Hain Celestial Grp., Inc. Sec. Litig., No. 16-CV-
4581, 2019 WL 1429560, at *19 (E.D.N.Y. Mar. 29, 2019); then
quoting Hain Celestial, 20 F.4th at 138).) Plaintiffs expound
their objections by addressing them under two categories: the
motive-and-opportunity-related scienter and the conscious-
misbehavior-and-recklessness-related scienter.

(i)   <u>Motive & Opportunity Scienter</u><br>(<u>see</u> R&R at 47-65)

Plaintiffs highlight three situations upon which they
relied to allege scienter and with which they object to the
Magistrate Judge's recommendations, to wit: suspiciously timed and
unusual insider stock sales; Individual Defendants' bonuses; and,
use of the Company's stock for acquisitions. As to the stock
sales, Plaintiffs argue that, although Magistrate Judge Dunst
"correctly found that the 'sales volume and the holding portion'
of Defendants insider stock sales 'favor[ed] an inference of
scienter'," he erred in concluding the "suspiciously timed and

unusual stock sales did not support an inference of scienter."
(Obj. at 18 (citing R&R at 50-51; quoting R&R at 51).)   They
contend this error was based upon the Magistrate Judge having
inappropriately engaged in fact-finding regarding:

> (i) Plaintiffs' purported failure to allege
> net profits (versus the net proceeds reported
> in Reports on Form 4 filed the SEC); (ii) the
> timing of the insider sales; and (iii) the
> absence [of] suspicious insider stock sales by
> the two Individual Defendants who were not at
> Hain for the entirety of the Class Period.

(Id.)   Plaintiffs continue by faulting the Magistrate Judge for
advancing, without analysis, an argument not made by Defendants,
i.e., that Plaintiffs failed to allege net profits, which, in any
event, is but one, non-dispositive factor to consider.   (Id. at
18-19 (citing R&R at 48).)   Indeed, according to Plaintiffs, given
they pled proceeds from the sales, the percentages of holdings
sold, and the alleged suspect timing of the sales, which are
relevant factors to the scienter determination, the lack of alleged
net profits is of no consequence.   (Id. at 19.)   As for the timing
of the insider stock sales, Plaintiffs contend the Report's focus
on trades made within the final 100-day period from the end of the
Class Period was erroneous because Magistrate Judge Dunst
arbitrarily and capriciously derived that timeframe from cherry-
picking fact-specific case law to conclude that the timing of the
subject sales, i.e., outside the 100-day period, cuts against
scienter.   (Id. (citing R&R at 49).)   Rather, the Magistrate Judge

should have considered the timing of the sales with other factors, such as the percentage of shares sold by Carroll and Simon, which would have supported finding an inference of scienter. (See id. at 19-20.) Moreover, Plaintiffs would have the Court disavow Magistrate Judge Dunst's discounting of Carroll's and Simon's stock sales as inferring scienter based upon the lack of stock sales by insiders Smith or Conte; at most, that fact should undermine scienter as to Smith and Conte only. (See id. at 20 (citing R&R at 49-50).)

Additionally, Plaintiffs assert the R&R erroneously recast their well-pled allegations regarding Carroll's and Simon's bonuses, rendering those allegations too general to support an inference of improper motive. (See Obj. at 20 (citing R&R at 47); see also R&R at 52.) Indeed by truncating Plaintiffs' bonus-related allegations to "the Individual Defendants were motivated to inflate the Company's stock price to increase their compensation," Plaintiffs argue the Magistrate Judge improperly concluded those allegations failed to establish scienter since "the law is clear that the desire of individual defendants to . . . increase their compensation by artificially inflating stock price is not sufficient to establish motive." (R&R at 52.) Moreover, they contend this misconstrues their allegations and position since what they pled was that Carroll and Simon "were motivated to misrepresent Hain's financial results because of the large cash

bonuses and stock option grants <u>that were closely tied to the Company's financial performance, including Hain's net sales</u>," and, that in FY2015, Simon met his bonus target for net sales by only 0.1%." (Obj. at 20-21 (first quoting SAC at ¶ 363; then citing SAC at ¶ 364).) In other words, "nowhere in the [SAC] do Plaintiffs contend that Defendants manipulated Hain's stock price to increase their bonuses; yet, the Recommendation denigrates these well-pled allegations on that errant (and non-existent) basis." (<u>Id.</u> at 21 (citing R&R at 54[8]).)

Similarly, Plaintiffs maintain that the Report "recasts Plaintiffs' allegations concerning Defendants' use of Hain stock to effectuate acquisitions during the Class Period," thereby declining to find those allegations support a finding of scienter. (<u>See</u> Obj. at 21 (<u>comparing</u> SAC ¶ 367, <u>with</u> R&R at 52-54 ("[Plaintiffs] assert in a conclusory fashion that Defendants acted with scienter to inflate Hain stock to complete three acquisitions in 2014 and one acquisition in 2015.")).) Plaintiffs contend their allegations are that Defendants carried out the subject acquisitions with fraudulently inflated stocks, which is "a motive allegation that supports a finding of scienter." (<u>Id.</u> (explaining further "Plaintiffs do not allege that Defendants' acquisitions were fraudulent").) Hence, Plaintiffs would have the

---

[8] Citation to page 54 of the R&R is incorrect; the correct citation should be to page 52 of the R&R.

Court reject the Magistrate Judge's finding of lack of scienter arguing his misconstruction of their allegations regarding Defendants' use of Hain's stock for the subject acquisitions led to this incorrect recommendation.  (See id.)

       (ii)    <u>Misbehavior or Recklessness Scienter</u>
              (<u>see</u> R&R at 54-65)

      Plaintiffs claim several errors in Magistrate Judge Dunst's recommended finding of no scienter.  (<u>See, e.g.</u>, Obj. at 22 ("While the Recommendation noted that Defendants triggered a duty to disclose the existence of the improper sales practices and deemed Defendants' argument against such disclosure as 'untenable' and 'misplaced' . . . it paradoxically concluded Defendants' failure to fulfill that duty was not undertaken with scienter." (<u>Id.</u> (first quoting R&R at 34; then citing R&R at 31-38).)

      First, regarding Defendants' knowledge of, and active participation in, the Company's unsustainable sales practices, Plaintiffs argue it was error to find no scienter based upon the Individual Defendants' personal involvement in the undisclosed sales practices, together with their extensive efforts to conceal the extent and terms of those practices, which other courts have found adequate.  (<u>Id.</u> at 23 (citing <u>In re Scholastic Corp. Sec. Litig.</u>, 252 F.3d 63, 76 (2d Cir. 2001)).)  Plaintiffs contend this error occurred because the Magistrate Judge ignored Plaintiffs' relevant allegations regarding same, instead "awkwardly

SPA-31

contend[ing] that the absolute right of return allegations were based on inadequate CW allegations and therefore failed." (Id.) Moreover, from Plaintiffs' perspective, Magistrate Judge Dunst incorrectly failed to consider the Individual Defendants' close monitoring of inventory levels as an indicia of scienter (see R&R at 24-25), as well as Plaintiffs' "allegations that distributors' refusal to accept excess end-of-quarter inventory from Hain was the match that lit the fuse of the Company's accounting investigations, SEC settlement, and massive investor losses." (Id. at 24.)

Second, regarding the Company's internal controls and accounting, Plaintiffs assert Hain's admission in its late-filed FY2016 Form 10-K that the Company needed to restate its results for FY2014, FY2015, and the first three quarters of FY2016 supports scienter; therefore, the Magistrate Judge's recommended finding to the contrary is error. (See Obj. at 24-25.)

Third, regarding their allegations of terminations, resignations, and demotions, Plaintiffs maintain Magistrate Judge Dunst incorrectly concluded "that the personnel changes during the Class Period at Hain's accounting department, executive officer positions, and other functions directly related to the [alleged] fraud does not contribute to an inference of scienter," coupled with the wrong finding that "Plaintiffs did not adequately plead independent facts indicating that the personnel changes were tied

**SPA-32**

to the alleged fraud, that these changes somehow alerted defendants to the fraud, or that the defendants' scienter was otherwise evident." (Id. at 25 (citing R&R at 59).) Plaintiffs are left perplexed given they "plead that the termination of seven executives and the demotion of two more--a group that included each Individual Defendant--contribute to a strong inference of scienter when considered holistically with Plaintiffs' other scienter allegations." (Id. (citing SAC at ¶¶ 339-50).) They argue other courts have found such suspicious resignations tied to unethical sales practices are at least as compelling as any opposing scienter. (Id. (quoting Bos. Ret. Sys. v. Alexion Pharm., Inc., 556 F. Supp. 3d 100, 136 (D. Conn. 2021).) Relatedly, to the extent the Magistrate Judge stretches to find other, alternative explanations for the terminations, resignations, and demotions, he erred in finding those explanations to be more compelling than the ones advanced by Plaintiffs. (See id. at 26-27 ("The Recommendations independent fact finding and creation of alternative explanations for personnel changes at Hain is improper and must be rectified.").)

Fourth, regarding Plaintiffs' reliance upon the core operation doctrine to support scienter, in asserting the Magistrate Judge erred in recommending Plaintiffs' core operations theory does not support such a finding, Plaintiffs state they never argued their scienter allegations hinged only on that theory.

(Obj. at 27 (citing Suppl. Opp'n at 6-8; Opp'n at 17-23; CAC Opp'n
at 9-19).)  In any event, even if not expressly endorsed by the
Circuit Court, courts within the Second Circuit rely upon the
doctrine to infer scienter.  (See id. (citing Haw. Structural
Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., 422 F.
Supp. 3d 821, 852 (S.D.N.Y. 2019); further noted cases omitted).)

> d. Re: The CWs' Allegations Recommendation

Succinctly, Plaintiffs argue that despite their well-
pled CW allegations, Magistrate Judge Dunst erred in finding those
allegations "too conclusory and generic" and "based upon rumor or
conjecture" because (1) said allegations were detailed and
(2) complaints may be based upon hearsay at the pleading stage.
(Obj. at 28 (citing City of Warren Police & Fire Ret. Sys. v. World
Wrestling Enter., 477 F. Supp. 3d 123, 132 (S.D.N.Y. 2020).)
Plaintiffs highlight "[t]he City of Warren opinion also rejected
'as easily distinguishable' the defendants' reliance upon the same
cases that the Recommendation uses as grounds to ignore the well-
pled allegations from the CWs."  (Id. (citing City of Warren, 477
F. Supp. 3d at 132 n.1).)  Plaintiffs would further assign fault
to the R&R since the Report "ignores precedent from within the
Second Circuit which plainly holds that confidential witnesses
need not have direct contact with Individual Defendants to credit
their allegations."  (Id. at 28-29 (citing In re Avon Sec. Litig.,
No. 19-CV-1420, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019)).)

e. <u>Re: The Corporate Scienter Recommendation</u>

Reciprocally, Plaintiffs propound that "[b]ecause the Court should correct the Recommendations' mistaken position that the [SAC] should be dismissed for failure to plead scienter as to the Individual Defendants, the Court should also find that the Individual Defendants' scienter is imputed to Hain."   (Obj. at 29.)

f. <u>Re: The Section 20(a) Claim Recommendation</u>

Correspondingly, and based upon their objections to the Magistrate Judge's recommendations that Plaintiffs' first cause of action, the Rule 10(b) Claim, be dismissed, Plaintiffs also lodge an objection to Magistrate Judge Dunst's recommendation that their third cause of action, the Section 20(a) Claim, be dismissed. (<u>See</u> Obj. at 29.)

g. <u>Re: The Dismissal with Prejudice Recommendation</u>

Finally, as to Magistrate Judge Dunst's recommendation that Plaintiffs' SAC be dismissed with prejudice, Plaintiffs object to same, arguing that the recommendation is improperly based upon the passage of time when, in actuality, Plaintiffs have "had only two opportunities to replead." (Obj. at 30 ("The Recommendation did not . . . deem amendment futile," but simply that the case "has been pending too long." (<u>Id.</u> (citing R&R at 68); <u>see also</u> R&R t 67.)

2. <u>Defendants' Responses</u>[9]

a. <u>Re: The Scienter Recommendations, Generally</u>

Defendants maintain Magistrate Judge Dunst properly considered scienter, following the Second Circuit's directive to do so collectively. (Response at 4.) Thus, the Magistrate Judge's initial individual consideration of Plaintiffs' various scienter allegations is of no moment. (<u>See</u> <u>id.</u>) Moreover, in collectively evaluating Plaintiffs' scienter allegations, Magistrate Judge Dunst rightly determined "that any reasonable inference of scienter was 'far less compelling than an inference of, at most, non-actionable mismanagement and negligence.'" (<u>Id.</u> at 5 (quoting R&R at 65).)

(i) <u>Motive & Opportunity Scienter</u>

Defendants would debunk each of Plaintiffs' motive-and-opportunity-related objections. As to the stock sales, Defendants assert the Magistrate Judge correctly relied upon three factors,

---

[9]  Defendants' Response does not track the order of Plaintiffs' objections; instead, their Response proceeds as following: first, addressing scienter (i) beginning with its collective consideration, (ii) then proceeding to the Motive and Opportunity Prong, (iii) followed by the Misbehavior and Recklessness Prong, (iv) then to consideration of the CWs' allegations, and (v) finally addressing corporate scienter; second, addressing Plaintiffs' purported abandonment of claims concerning Hain's reported financial results; third, addressing whether Plaintiffs' pled an actionable misstatement or omission, both as to an absolute-right-of-return and as to disclosure of certain sales practices; fourth, addressing Plaintiffs' Section 20(a) Claim; and, finally, addressing the recommendation to dismiss this action with prejudice.

collectively, in finding no sale-related scienter:  the failure to allege net profits from the sales, which the Magistrate Judge found to be "merely one of the many '[r]elevant factors'" considered (Response at 6 (citing R&R at 48; further stating "[n]o portion of the Report suggests that this finding was alone dispositive")); the lack of suspiciously timed stock sales, with the Magistrate Judge using a 100-day-period, supported by case law, merely as a contrast to Plaintiffs' position that sales well-outside a 100-day-period before the end of the Class Period support scienter, but for which proffered longer time-period Plaintiffs do not cite any case law (see id. at 7 (citing R&R at 49)); and the lack of other insider sales, which -- contrary to the Plaintiffs' objection -- was not used as a "per se rule" against scienter (id. (comparing Obj. at 7, with R&R at 50-51)).  Moreover, to the extent Plaintiffs argue the Magistrate Judge inappropriately engaged in fact-finding, that is incorrect since what Magistrate Judge Dunst did was draw inferences as the Supreme Court instructs.  (See id. (first citing Obj. at 18; then quoting Tellabs, 551 U.S. at 314).)

Then, as to bonuses, Defendants contend the Magistrate Judge's findings that Plaintiffs' bonus-related allegations do not support scienter "are in lockstep with the settled principle of Second Circuit law . . . ."  (Response at 8 (citing R&R at 52 (collecting cases)).)  They argue Magistrate Judge Dunst followed "the well-established principle" "that scienter cannot be based on

# SPA-37

a motivation for the company to succeed," which "applies equally to sales figures—_i.e._, financial performance—as it does to stock prices." (_Id._ (citations omitted); _see also_ _id._ at 9.)

Continuing, as to Hain's acquisitions with Company stocks, Defendants contend Magistrate Judge Dunst properly found Plaintiffs' acquisition-related allegations do not support scienter given the lack of necessary extremely contextual allegations demonstrating a unique connection between the purported fraud and the acquisition. (Response at 9 (citing R&R at 53-54).) Defendants would further have the Court find unpersuasive Plaintiffs' misapprehension-based objection regarding the Magistrate Judge's finding that "Plaintiffs offer nothing to demonstrate that Defendants made material misstatements or omissions to inflate Company stock price for any of the Acquisitions" since, by its plain meaning, the finding makes clear no misapprehension was had. (_Id._ at 10 (quoting R&R at 53-54).) In addition, the cases upon which Plaintiffs rely do not support their contention that the Company's stock-reliant acquisitions had any unique connection to the alleged fraud. (_See_ _id._ (further stating "Plaintiffs admit the acquisitions were part of Hain's business strategy since 2000" (citing SAC at ¶¶ 45-46; emphasis in Response)).)

**SPA-38**

(ii) <u>Misbehavior or Recklessness Scienter</u>

Under the Misbehavior or Recklessness Prong, Defendants initially contend that, as the Magistrate Judge found, Plaintiffs did not adequately plead an absolute-right-of-return; therefore, their theory of "unsustainable practices" fails to meet the requisite pleading standards. (Response at 11.) Indeed, Defendants argue Plaintiffs do not dispute Magistrate Judge Dunst's finding that Plaintiffs have abandoned this theory of their case, which Defendants maintain "is an allegation and theory that was offered to support each and every one of [Plaintiffs'] claims." (Response at 11 (citing R&R at 39, 55).) Defendants highlight that "Plaintiffs refer to the alleged 'absolute right to return' at least 25 times in the SAC as support for its core 'unsustainable practices' theory—that Hain was selling product it expected would get returned and therefore the sales were 'unsustainable'." (<u>Id.</u> (citing SAC).) Yet, those allegations "rely entirely on the CWs", which the Magistrate Judge found were "too sparse" to support the claim, thereby rightly supporting the Magistrate Judge's finding that scienter was not alleged based upon "unsustainable practices. (<u>Id.</u> at 11-12 (quoting R&R at 39, 55) (reiterating "Plaintiffs do not challenge here that they failed to adequately plead an absolute right of return" thereby requiring an adoption of the Magistrate Judge's recommendation that there is no inference of scienter based upon "unsustainable practices").)

Furthermore, Defendants advance that Plaintiffs' objection regarding Simon's and Carroll's negotiated sales should be overruled since Magistrate Judge Dunst both addressed those allegations and "found that 'offer[ing] sales and promotions to meet revenue targets . . . are common practice." (Response at 12 (quoting R&R at 56-57).)  Because that is what the Magistrate Judge found to have occurred here, as underscored by the SEC Order, it was also proper that he found no strong inference of scienter based upon Carroll's and Simon's sales practices.  (See id.; see also id. at 13 (further discussing how the SEC Order undermines inferences of wrongful intent regarding the Company's sales practices).)

In addition, Defendants propound that the Magistrate Judge's finding of a lack of scienter based upon SOX, GAAP, and internal controls violations was correct because: Plaintiffs relied on facts that occurred after the Individual Defendants signed their SOX certifications, when what was necessary was allegations of knowledge at the time the SOX certifications were executed (Response at 13); the Company's financial statements were audited by Ernst & Young from 2013 through 2016, thereby negating any intent to deceive (see id. 13-14); and, Hain's remedial actions after the Class Period undercut any inference of scienter, which recommendation Plaintiffs do not challenge (see id. at 14).  Thus, Defendants contend these allegations reflect, at most

"[u]nactionable corporate mismanagement" and not scienter.  (Id. citing R&R at 58-59).)

Likewise, Defendants counter Plaintiffs' objection regarding their employment-status-changes allegations, i.e., that the Magistrate Judge wrongly engaged in independent fact finding and creating alternative explanations (see Obj. at 27), advancing their position that Magistrate Judge Dunst properly found Plaintiffs' reliance on CW allegations insufficient to allege scienter, as well as competing inferences that could be drawn from said allegations, which outweighed Plaintiffs' proffered inference of scienter. (Response at 14.)  According to Defendants, this was correct because "the court reviewing scienter allegations is directed to consider 'competing inferences rationally drawn from the facts alleged.'" (Id. at 15 (quoting Tellabs, 551 U.S. at 314).)  Moreover, this was the right conclusion given the absence of independent evidence suggesting the employment changes were highly unusual. (Id. (citing R&R at 59).)

### (iii)   The CWs' Allegations

Finally, regarding Magistrate Judge Dunst's finding that Plaintiffs' CWs' allegations lack sufficient specificity, Defendants argue "Plaintiffs vaguely claim that the CWs generally support scienter," but fail to make specific arguments rebutting why said statements are not too conclusory or vague to be credited. (Response at 16 (citing R&R at 39-40, 55-56, 60) (further

highlighting that in their Objection, Plaintiffs "do not discuss any particular CW or specific allegation").)  In support of the Report, Defendants provide a witness-by-witness list of examples showing why Magistrate Judge Dunst found each CW's allegations to be too vague and conclusory, and, thereby, insufficient.  (See Response at 17-18.)  Additionally, Defendants argue "Plaintiffs have long been on notice as to the fatal flaws in their reliance on their CWs" and encourage this Court to "adopt the persistent conclusion in three written decisions that 'the confidential witnesses' allegations are too vague, speculative, and conclusory to contribute to an inference of scienter.'"  (Id. at 18 (citing R&R and Judge Spatt's prior Dismissal Orders, ECF Nos. 106 & 122).)

(iv) Corporate Scienter

Relatedly, since "Plaintiffs rely exclusively on the imputation of individual scienter to Hain to plead the Company's corporate scienter," since the Magistrate Judge properly found Plaintiffs failed to raise an inference of scienter as to the Individual Defendants, the correctness of that conclusion inures to the related conclusion that Plaintiffs failed to plead corporate scienter.  (Response at 18.)

b. Abandoned Claims Recommendation

Addressing Plaintiffs' objection to Magistrate Judge Dunst's claim-abandonment finding, Defendants focus on the recommended finding that "Plaintiffs' challenge is 'not [to] the

financial figures [themselves] but instead the failure to disclose Hain's 'reliance on pull-in sales tactics to generate sales.'" (Response at 19 (quoting R&R at 30 (brackets in Response)).) Defendants explain that, in the context of opposing Defendants' materiality arguments raised in their Dismissal Motions, Plaintiffs challenged the omission of allegedly improper tactics underlying the Company's financial results and not the literal falsity of those results. (See id. (citing Pls. Opp'n at 12 and Suppl. Opp'n at 3).) Thus, Magistrate Judge Dunst's claim-abandonment finding was correct since "Plaintiffs themselves took the position that the SAC 'challenge[d] as materially omissive not the financial figures' but the supposed failure to disclose the sales tactics 'that generated these figures.'" (Response at 19-20 (quoting Report at 30 (citing Plaintiffs' own pleading)).) Hence, Defendants characterize this not as abandonment, but "an explicit acknowledgement of what [Plaintiffs'] claims are and are not about." (Id. at 20; see also id. at note 10 (asserting that even if Plaintiffs had not abandoned their literal-falsity-of-financial-results claim, such claim would fail on scienter grounds).)

### c. The Unactionable Statements Recommendaiton

Contrary to Plaintiffs, Defendants further insist the Magistrate Judge correctly found Plaintiffs failed to plead an actionable omission, i.e., that Hain did not disclose its

# SPA-43

engagement of certain unsustainable practices, which Plaintiffs contend consisted of an "absolute right of return" and other practices such as sales incentives and promotions. (Response at 20 (citing R&R at 39).) As to the absolute-right-to-return prong, Defendants underscore the Magistrate Judge's reliance on CW allegations in reaching his recommendation that Plaintiffs' claims are too conclusory and/or vague to sufficiently plead the Company generated sales by relying upon that practice. (See id. (citing R&R at 39-40).) In sum, Defendants claim, "[b]ecause Plaintiffs did not properly plead that Hain granted an absolute right of return, they ipso facto did not plead a failure to disclose it." (Id.) As to the other sales practices, the Magistrate Judge correctly found the Company disclosed such practices (see id. at 21 (citing R&R at 41)) and that "Plaintiffs conceded explicitly in the SAC that 'throughout the Class Period' the Company disclosed its use of these sales incentives and specified that its reported sales figures were net of those incentives." (Id. (quoting R&R at 42).) Simply, there can be no failure-to-disclose claim because the Company did disclose. (See id. at 22 (citing R&R at 42 (collecting cases)).) Moreover, Plaintiffs' objection based upon the Company's alleged lack of intensity and credibility regarding its disclosure of incentives and promotions is unavailing, especially since this is not a case of "affirmative misstatements" requiring intense correction. (See id. (citing R&R at 41-43)

**SPA-44**

(further discounting cases Plaintiffs rely upon as inapposite to the instant case).)  Rather, Magistrate Judge Dunst was correct in finding Hain openly disclosed its sales and incentives practices. (See id.)

Addressing whether the Company's statements regarding its accounting controls were actionable, Defendants maintain Plaintiffs do not challenge Magistrate Judge Dunst's recommendation that the statements are opinions and, therefore, not actionable.  (Response at 23 (citing R&R at 43-46).) Defendants explain that "Plaintiffs do not dispute the Report's conclusion that the 'SEC Order does not even discuss . . . the assertions in the SOX Statements that management reviewed Hain's internal controls and concluded that the Controls were effective.'"  (Id. (quoting R&R at 44).)  Further, regarding the Individual Defendants knowing about deficient accounting controls at the time they signed the SOX Statements, Plaintiffs rely upon the CWs' statements to support their objection to the Report, which is not enough to sustain their objection given the Magistrate Judge's finding that the SAC CW allegations are too general and conclusory to support Plaintiffs' position.  (Id. at 24.)  And, as Defendants also observe, Plaintiffs do not "address the principle of law that a 'post-Class Period identification of control deficiencies' is insufficient to show that the Individual Defendants knew—at the time they signed their certification[s]—of

any deficiencies in the Company's internal controls." (Id. (quoting R&R at 45 (citing cases)).)

### d. The Section 20(a) Claim Recommendation

As to Plaintiffs' Section 20(a) claim, their third cause of action, Defendants argue Plaintiffs' objection to the dismissal of this claim is based on its unavailing objections to Magistrate Judge Dunst's recommendation that their Rule 10(b) Claim be dismissed. (Response at 29.) Because there are no grounds to sustain Plaintiffs' underlying objections, this concomitant objection likewise fails. (See id.)

### e. The Dismissal with Prejudice Recommendation

Finally, the Defendants would have the Court overrule Plaintiffs' objection to the recommendation that their SAC be dismissed with prejudice. (See Response at 29-30.) They base their position on the passage of time, which is mentioned by the Magistrate Judge, further arguing that "Plaintiffs offer no new facts that they could plead to rectify the SAC's deficiencies." (Id. at 30.)

### C. The Court's Rulings

#### 1. Scienter

Notwithstanding Magistrate Judge Dunst's threshold recommendation finding that Plaintiffs have failed to plead an actionable misstatement or omission (see R&R at 46), with which the Court concurs, in light of the Second Circuit's mandate that

# SPA-46

"[o]n remand, the district court should independently reassess the sufficiency of the scienter allegations, considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity," Hain Celestial, 20 F.4th at 138, herein the Court focuses on Magistrate Judge Dunst's scienter recommendations, Plaintiffs' objections thereto, and Defendants' responsive arguments. Hence, for the reasons that follow, even if the Court were to sustain Plaintiffs' further Rule 10(b) Claim-related objections, because the Court overrules Plaintiffs' scienter-related objections--individually and cumulatively--it is not necessary to address these other objections or Plaintiffs' objections regarding their Rule 20(a) Claim, which, as pled, is dependent upon their Rule 10(b) Claim. The Court proceeds by addressing the scienter objections as presented by Plaintiffs: first, the motive-and-opportunity-related scienter; and, second, the conscious-misbehavior-and-recklessness-related scienter. Generally, however, Plaintiffs' reliance on Judge Spatt's prior "close call" observation regarding scienter is of no moment since it applied to Plaintiffs' Amended Consolidated Class Action Complaint, not the subject SAC. Second, such reliance would fly in the face of the Circuit Court's directive that this Court consider afresh the SAC, which is precisely what the Magistrate Judge has done.

**SPA-47**

a. <u>Motive & Opportunity Scienter</u>

The Court agrees with Magistrate Judge Dunst regarding Plaintiffs' reliance on stock sales; individually and collectively, finding it does not raise an inference of scienter. After properly identifying the appropriate framework for considering stock sales as an inference of motive-and-opportunity-related scienter, <u>i.e.</u>, considering various relevant non-dispositive factors (<u>see</u> R&R at 48 (listing by way of example: sale profits; percentage of stocks sold; change in volume of insider sales; number of shares sold; and, timing of sales)), the Magistrate Judge examined Plaintiffs' allegations against this framework, correctly finding the allegations wanting, with each finding well-supported by case law. (<u>See</u> R&R at 48-51.) Likewise, the Court rejects Plaintiffs' characterization of the Magistrate Judge's consideration of the various sales factors as engaging in erroneous fact-finding. Not so. As Plaintiffs themselves recognize (<u>see</u> Opp'n at 17), in accordance with Supreme Court directives, when presented with scienter allegations, courts are to consider competing inferences rationally drawn from the facts alleged. <u>See Tellabs</u>, 551 U.S. at 323-26 (instructing "the court must take into account plausible opposing inferences" and "the reviewing court must ask: [w]hen the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing

inference?").  Magistrate Judge Dunst has performed the requisite comparison, not engaged in improper fact-finding.  Further, the Court will not assign error to the Magistrate Judge's consideration of Plaintiffs' failure to allege net profits on the sales notwithstanding this argument was not raised by Defendants; it is a relevant factor and clearly was not dispositive in the Magistrate Judge's consideration of scienter related to the stock sales.  See, e.g., In re Inv. Tech. Grp., Inc. Sec. Litig., 251 F. Supp. 3d 596, 622 (S.D.N.Y. 2017) ("A number of courts in this district have found that allegations do not support a finding of 'motive and opportunity' when net profits are not pleaded") (collecting cases).  Similarly, Magistrate Judge Dunst's use of a comparative 100-day-period in assessing the time period of the stock sales is not error; case law supports his use of this approximate time-frame to assess the suspiciousness of the stock sales.  See, e.g., Reilly, 2018 WL 3559089, at *14 ("Indeed, courts in this Circuit are frequently skeptical that stock sales are indicative of scienter where no trades occur in the months immediately prior to a negative disclosure" (collecting cases)).  In the absence of countervailing case law to support their argument for consideration of a longer time-period, Plaintiffs' objection on this point carries little weight.  Finally, Plaintiffs' objection to Magistrate Judge Dunst finding Individual Defendants Conte and Smith not selling Company stock as cutting against a finding of

scienter is little more than a disagreement with his assessment of this stock sale factor; their theory that these Individual Defendants were not with the Company for the full 3.5-year Class Period, without more, is unavailing to assign error to the Magistrate Judge's consideration of this factor. Nor have Plaintiffs persuasively shown how Magistrate Judge Dunst failed to decide the stock sales factor on the facts of this case. Of import, thereafter, Magistrate Judge Dunst collectively evaluated the stock sales motive-and-opportunity allegations and found they failed to infer scienter as compelling as competing non-fraudulent inferences; Plaintiffs raise no objection to this finding, which is not clearly erroneous. In sum, Plaintiffs' stock-sales-related objections are overruled.

Regarding consideration of Carroll's and Simon's bonuses as a scienter factor, the Court disagrees with Plaintiffs' contention that Magistrate Judge Dunst improperly recast their allegations. The Magistrate Judge fairly summarized Plaintiffs' argument and properly assessed the related allegations; his subsequent bonuses-related finding, supported by case law, is not faulty. Hence, Plaintiffs' bonuses-related objection is overruled.

Finally, Plaintiffs' objection regarding Magistrate Judge Dunst's stock-supported acquisition finding -- i.e., that such acquisitions did not infer scienter -- is equally unavailing.

# SPA-50

Plaintiffs do little more than disagree with the Magistrate Judge's succinct rephrasing of Plaintiffs' relevant stock-supported acquisition allegations; such disagreement is untenable to sustain Plaintiffs' lodged objection.   Indeed, for this "extremely contextual" inquiry, Plaintiffs fail to identify any unique connection between the alleged fraud and the subject acquisitions that could support such an inference.   See ECA, 553 F.3d at 201 n.6; see also id. at 201 ("[T]he link between the acquisition and the alleged misconduct simply is not close enough to strengthen the inference of an intent to defraud.").   Therefore, without more, it was not erroneous for the Magistrate Judge to find a lack of scienter from the proffered stock-supported acquisitions, thereby warranting the overruling of Plaintiffs' corresponding objection.

b. Misbehavior or Recklessness Scienter

As stated, supra, Plaintiffs advance arguments of scienter through recklessness.   To advance a recklessness theory in support of their fraud claims, Plaintiffs are required to allege "a state of mind approximating actual intent, and not merely a heightened form of negligence."   In re Bristol-Myers Squibb Co. CVR Secs. Litig., No. 21-CV-8255, -- F. Supp. 3d --, 2023 WL 2308151, at *4 (S.D.N.Y. Mar. 1, 2023) (quoting Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 106 (2d Cir. 2015) (cleaned up).   That is, "a plaintiff must allege, 'at the least,' that the defendant engaged in 'conduct which is highly unreasonable and which

# SPA-51

represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Id. (quoting Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001) (cleaned up).

The Court finds Plaintiffs' objections to the Magistrate Judge's recklessness scienter recommendation, which Magistrate Judge Dunst based upon five categories of allegations, are not sustainable. To begin, Plaintiffs make a perfunctory objection that the Magistrate Judge has not properly considered Plaintiffs' allegations of the Individual Defendants' personal involvement in the Company's alleged undisclosed sales practices. (See Obj. at 22-23 (citing R&R at 55-57).) Indeed, Plaintiffs fail to raise any meaningful objection to the Magistrate Judge's finding regarding the absolute-right-of-return allegations. (Cf. R&R at 55-56, with Obj. at 23.) Nor do they clearly object to the Magistrate Judge's determination that "at the heart of Plaintiffs' claims is the allegation that Hain drove sales by granting distributors a right to return Excess Inventory, [and that] the exercise of that right in turn increased the deficit between Hain's actual and reported sales each financial quarter . . . ." (R&R at 39; see also id. at 55.) As Defendants observe, "Plaintiffs refer to the alleged 'absolute right to return' at least 25 times in the SAC as support for its core 'unsustainable practices' theory" and

that "[t]he Report rightly found that such allegations 'rely entirely on the CWs' [which] were 'too sparse' to support the claim." (Response at 11 (citing R&R at 39, 55; citations to SAC omitted); see also id. at 16-18 (further addressing the CWs' allegations as "vague, conclusory and ultimately insufficient" and listing examples of same).) Relatedly, other than baldly asserting the Magistrate Judge "fail[ed] to engage with Plaintiffs' allegations that Defendants had personal knowledge of the unsustainable and undisclosed sales practices," (Obj. at 23 (emphasis in original)), Plaintiffs fail to expound upon this point, which is unavailing in light of Magistrate Judge Dunst's thorough discuss of same.  (See R&R at 56-57 (Part IV(D)(2)(b), "Hain's Reliance On Sales Incentives and Promotions").)  Moreover, as Defendants astutely highlight, "the SEC Order undermines inferences of wrongful intent on this question . . . stat[ing] there was nothing wrong with Hain's sales practices, and the SEC did not charge the [C]ompany or any individual with fraud." (Response at 13; see also R&R at 56-57 ("[E]ven assuming the Individual Defendants pushed the Company to offer sales and promotions to meet revenue targets[,] that would 'contribute[] little to a strong inference of fraud because such actions are common practice.'" (quoting S.E.C. v. Espuelas, 698 F. Supp. 2d 415, 430 (S.D.N.Y. 2010); further citations omitted).)

# SPA-53

On the issue of alleged GAAP and internal controls violations, Plaintiffs' objections are little more than their disagreement with the Magistrate Judge's recommendation that the alleged violations do not support scienter. (See Obj. at 24-25.) Moreover, the case upon which Plaintiffs rely, In re CannaVest Corp. Secs. Litig., which is factually inapposite from the instant one, undercuts their objection. 307 F. Supp. 3d 222, 245-46 (S.D.N.Y. 2018). There, the plaintiffs' improper accounting allegations were strongly supported by statements of a confidential witness, who: was a financial consultant hired by the company; worked directly with the CEO; knew right away that the company was not applying proper accounting practices; and, reported frequently to the company's board of directors. See id. This is "far more than a misapplication of accounting principles," which is what is required to establish recklessness when improper accounting is alleged. Id. (internal quotations and citation omitted). Thus, the CannaVest allegations established that the company knew of its accounting failures. By contrast, here, having examined the SAC, the Magistrate Judge stated:

> Plaintiffs neither undermined the assertions in the SOX Statements that management reviewed Hain's internal controls and concluded that the controls were effective nor adequately pled that Defendants knew or were reckless in not knowing that the Company's internal controls were deficient. To this point, Plaintiffs "have not adequately alleged that defendants had any knowledge of 'glaring

> accounting irregularities' when they executed
> the SOX certifications . . . ." <u>Reilly</u>, 2018
> WL 3559089, at *19.   Instead, Plaintiffs
> "rel[y] only on facts occurring after
> Individual Defendants signed their
> certifications, namely the post-Class Period
> disclosures of material weaknesses in [Hain]'s
> internal controls . . . That dog won't hunt."
> <u>[In re] Diebold [Nixdorf, Inc., Secs. Litig.</u>,
> No. 14-CV-2900,], 2021 WL 1226627, at *14
> [(S.D.N.Y. Mar. 31, 2018)].

(R&R at 58.)

Finally, as to Plaintiffs' objection regarding personnel changes, they underscore having pled "the termination of <u>seven</u> executives and the demotion of <u>two</u> more—a group that includes each Individual Defendant," which Plaintiffs argue "contribute to a strong inference of scienter when considered holistically with Plaintiffs' other scienter allegations."  (Obj. at 25 (citing SAC ¶¶ 339-50).)  They also contend the timing of the personnel changes can support a strong inference of scienter.  (<u>Id.</u> at 26 (quoting <u>In re Salix Pharm., Ltd.</u>, No. 14-CV-8925, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016).)  That may be so, but in <u>Salix</u>, cited by Plaintiffs, the court found the resignations of top company executives to be "'highly unusual and suspicious' because the [company] Board exercised the clawback provisions in their resignation agreements," which provisions "allow[ed] for a clawback based on a Board determination that the Individual Defendants 'intentionally engaged in wrongdoing.'" <u>Salix</u>, 2016 WL 1629341, at *15.  The timing of the <u>Salix</u> executives' resignations

# SPA-55

was not the dispositive factor in finding scienter based upon resignations. See, e.g., Francisco v. Abengoa, S.A., 624 F. Supp. 3d 365, 402 (S.D.N.Y. 2022) ("As there is no other circumstantial evidence of fraud, even if the Court were to find [the timing of] Sanchez Ortega's resignation suspicious, it would not be enough to rescue plaintiffs' claims.").

In comparison, here, Magistrate Judge Dunst properly found the timing of the personnel changes were not enough to elevate said changes to "highly unusual and suspicious" given the dearth of facts indicating those changes are "tied to" the alleged fraud. (R&R at 59 (quoting Glaser, 772 F. Supp. 2d at 598); see also, e.g., id. at 60 (re: Smith ("Courts routinely hold that without more, resigning after an even shorter tenure than Smith's does not support scienter." (citations omitted)); at 61 (re: Carroll ("Plaintiffs failed to plead independent facts indicating that Carroll's employment change was tied to the alleged fraud, alerted defendants to the alleged fraud, or that Carroll's scienter was otherwise evident." (citation omitted))); at 61 (re: Conte ("Plaintiffs fail to allege sufficient facts to support that Conte acted with scienter in connection with the challenged statements, that his resignation somehow alerted anyone at Hain to the alleged fraud, or that his scienter was otherwise evident.")); at 62 (re: Simon ("Plaintiffs do not explain why Simon's resignation supports an inference of scienter. Under these circumstances, the timing

# SPA-56

of Simon's resignation—sixteen months after the Class Period ended—cuts against such an inference." (citations omitted)).) Furthermore, to the extent Plaintiffs further register an objection regarding the personnel changes based upon the Magistrate Judge's purported "independent fact finding and creation of alternative explanations," (Obj. at 27), such an argument fails. Magistrate Judge Dunst was correctly assessing whether the proffered scienter was "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 314.

Finally, Plaintiffs' objection that the Magistrate Judge improperly applied the "core operations" doctrine is erroneous. Magistrate Judge Dunst began by recognizing that the majority of courts within the Second Circuit find the doctrine "may provide support for[,] but not an independent basis of[,] scienter," and that courts in this District that have applied the doctrine require the operation at issue to make up nearly all of a company's business or be essential to the company's survival. (See R&R at 64 (first quoting Lipow v. Net1 UEPS Techs., Inc., 131 F. Supp. 3d 144, 163 n.11 (collecting cases); then quoting Francisco, 559 F. Supp. 3d at 320).) Then, giving Plaintiffs the benefit of the assumption that "the U.S. business is essential to Hain's survival because it generates approximately 60% of the Company's net sales," Magistrate Judge Dunst proceeded to find the Plaintiffs' reliance

on the "core operations" doctrine to be "misplaced given that the SAC fails to plead separate facts raising an inference of scienter to be supplemented by the core operations doctrine." (R&R at 64.) Thus, there is no reason to assign error here.

Plaintiffs do not lodge any objections regarding Magistrate Judge Dunst's collective evaluation of the recklessness allegations. (See Obj., in toto.) Nor does the Court find any.

### c. The CWs' Statements

In a general manner, Plaintiffs object to Magistrate Judge Dunst's CW-related findings. (See Obj. at 27-29.) As Defendants put forth, however: "Plaintiffs' Objection makes no specific arguments to rebut the three decisions finding each and every witness unreliable. . . . Plaintiffs do not discuss any particular CW or specific allegation or identify why these CW statements are not too conclusory and vague to be credited." (Response at 16 (citing Obj. at 27-29, further citation omitted).) Moreover, contrary to Plaintiffs' objection, in support of their position, Defendants provide a detailed list highlighting why the CWs' allegations are vague and conclusory. (See id. at 17-18.) The Court agrees with Defendants; the CWs' allegations are too vague, speculative, and conclusory to support an inference of scienter. See, e.g., Francisco v. Abengoa, S.A., 481 F. Supp. 3d 179, 208-09 (S.D.N.Y. 2020) (discrediting "general and second-

hand" confidential witness allegations).  Therefore, no error is had.

> d.  <u>The Company's Scienter</u>

Since the Court finds no error in the Magistrate Judge's recommendations regarding scienter as to the Individual Defendants, that recommendation flows to the Company's scienter: The lack of Individual Defendants' scienter imputes to Hain. Likewise, because Plaintiffs' objections regarding their Section 20(a) Claim are based upon their objections regarding their Rule 10(b) Claim, which the Court has overruled, the Court also overrules Plaintiffs' Section 20(a) Claim-related objections. <u>See, e.g.</u>, <u>In re Telefonaktiebolaget LM Ericsson Secs. Litig.</u>, No. 22-CV-1167, -- F. Supp. 3d --, 2023 WL 3628244, at *18 (E.D.N.Y. May 24, 2023) (where plaintiff "failed to establish a primary violation of Section 10(b), its Section 20(a) claim necessarily fails and must be dismissed").

> 2.  <u>Dismissal with Prejudice</u>

Finally, regarding Magistrate Judge Dunst's recommendation that the SAC be dismissed with prejudice, Plaintiffs object to same, arguing that the recommendation is based merely upon the passage of time, without the Magistrate Judge having addressed whether amending would be futile.  (Obj. at 30 (quoting FED. R. CIV. P. 15(a)(2).)  Not so.  In addition to observing the passage of time, Magistrate Judge Dunst also observed

"Plaintiffs had numerous opportunities to plead a case to survive dismissal," that Plaintiffs were afforded the opportunity to file their SAC, and that since the Circuit's Hain decision, "Plaintiffs have neither sought leave to further amend the SAC nor communicated that they possess facts that would bolster it."  (R&R at 67-68.) Hence, without using the word "futile", it is implied by the text of the recommendation that the finding of futility is the basis for the Magistrate Judge's recommendation of dismissal with prejudice.  Moreover, the Court notes: (1) in their Oppositions, Plaintiffs do not request leave to amend; and (2) despite the Magistrate Judge's recommendation of dismissal with prejudice, in their Objection, Plaintiffs fail to articulate any new facts that would rectify the deficiencies of their pleadings.  Cf. Reiner v. Teladoc Health, Inc., No. 18-CV-11603, 2021 WL 4451407, at *17-18 (S.D.N.Y. Sept. 8, 2021) (recommending, where "[i]n a single sentence at the end of their opposition brief, plaintiffs request that, 'if any part of the [subject amended c]omplaint is dismissed,' they be granted leave to replead," but where plaintiff also (1) had already been afforded the opportunity to amend in response to a previous dismissal, and (2) had "provide[d] no information – not even a hint – as to what more they believe they could allege to overcome the deficiencies" of the subject amended complaint, said complaint be dismissed with prejudice), report and recommendation adopted, 2021 WL 4461101 (S.D.N.Y. Sept. 29, 2021).

# SPA-60

Thus, here, Magistrate Judge Dunst's recommendation of dismissal with prejudice is proper; Plaintiffs' objection is overruled.

***

While some of Plaintiffs' objections are subject to clear error review, even upon <u>de novo</u> review, the Court finds the Magistrate Judge's scienter-related recommendations to be thorough and well-reasoned. Therefore, Plaintiffs' scienter-related objections are overruled. The Court adopts Magistrate Judge Dunst's scienter-related recommendations. In turn, in the absence of the requisite specific scienter allegations, Plaintiffs have failed to plausibly allege their Rule 10(b) and Rule 20(a) Claims, warranting granting the Dismissal Motions.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that:

I.   Plaintiffs' objections are OVERRULED;

II.  The R&R is ADOPTED as to the scienter-related recommendations and the dismissal recommendation;

III. Defendants' Dismissal Motions (ECF Nos. 113, 116) are GRANTED; and

IV.  The Clerk of Court enter judgment accordingly and, thereafter, mark this case CLOSED.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      September 29,2023
            Central Islip, New York

# SPA-61

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
In Re THE HAIN CELESTIAL GROUP INC.
SECURITIES LITIGATION,

                                               **JUDGMENT**
                                               CV 16-4581 (JS) (LGD)

---------------------------------------------------------------X

        An Order Adopting Report and Recommendation of Honorable Joanna Seybert, United States District Judge, having been filed on September 29, 2023; adopting the November 4, 2022 Report and Recommendation of United States Magistrate Judge Lee G. Dunst as to the scienter-related recommendations and the dismissal recommendation; granting Defendants The Hain Celestial Group, Inc., Irwin D. Simon, Pasquale Conte, John Carroll, and Stephen J. Smith's Dismissal Motions; and directing the Clerk of Court to enter judgment accordingly and mark this case closed, it is

        **ORDERED AND ADJUDGED** that Lead Plaintiffs Rosewood Funeral Home and Salamon Gimpel take nothing of Defendants The Hain Celestial Group, Inc., Irwin D. Simon, Pasquale Conte, John Carroll, and Stephen J. Smith; that Defendants' Dismissal Motions are granted; and that this case is closed.

Dated: September 29, 2023
       Central Islip, New York

                                    BRENNA B. MAHONEY
                                    CLERK OF THE COURT

                      By:    /s/ James J. Toritto
                                 Deputy Clerk